**Ok Hui BURNS, Plaintiff/Appellee,**

v.

**AETNA CASUALTY & SURETY CO.,
Defendant/Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Nov. 16, 1987.

Joe Guess, J. Paul Robinson, Knoxville, for plaintiff/appellee.

Robert R. Campbell, Douglas L. Dutton, J. William Coley, Knoxville, for defendant/appellant.

## OPINION

HARBISON, Chief Justice.

Appellee recovered judgment in a jury trial against an uninsured motorist and the owner of an uninsured vehicle which he was driving. Recovery was made for the wrongful death of the husband of appellee and for her own personal injuries received in a head-on collision between the automobile being driven by appellee's husband and that being driven by the uninsured motorist, Herman L. Lucas.

Appellant is the uninsured motorist carrier for Textron, Inc., a major corporation having its principal office in Providence, Rhode Island. The husband of appellee, Gary L. Burns, was an employee of a subsidiary of Textron and was operating a company-leased vehicle at the time of the accident. The vehicle was regularly assigned to him. Both he and his wife, the appellee, were residents of Tennessee at the time of the accident and the vehicle which was assigned to them was principally garaged in this state.

Textron, Inc., is a large conglomerate operating nationwide, and appellant was the underwriter for its vehicle fleet liability coverage. The policy of insurance also provided uninsured motorist coverage, as well

as comprehensive coverage and medical expense benefits.

The appellee's husband, Mr. Burns, was, of course, an additional insured under this policy, his employer Textron, Inc., being the named insured. No question is made concerning the extension of coverage to him under the various features of the policy, but the policy limit of uninsured motorist coverage available is in dispute.

The policy provided a single limit of liability insurance coverage of one million dollars for bodily injury and property damage arising out of a single accident. The fleet of vehicles covered by the policy was approximately one thousand six hundred, these vehicles being garaged in almost every state of the United States.

There were forty-nine special endorsements to the policy, thirty-three of which dealt exclusively with uninsured motorist coverage in the various states. The endorsement pertaining to Tennessee was numbered forty-six. Other endorsements dealt with various features of the policy and in some instances dealt with special insurance requirements of individual states.

The uninsured motorist coverage specified for the State of Tennessee was a single limit of $25,000 combined coverage for bodily injury and physical damage. Specific limits were scheduled for each of the other states, ranging from a low of $10,000/$20,000 for the State of Maryland to $75,000 single limit coverage for bodily injury in the State of New Hampshire.

The policy provided coverage for the period January 1, 1983 through December 31, 1983. The date of the accident was October 1, 1983.

There is no question but that the policy would have provided only $25,000 coverage for the injuries sustained by appellee and her husband except for the provisions of certain Tennessee statutes relied upon by appellee. Under those statutes both the trial court and the Court of Appeals held that the applicable limits for uninsured motorist coverage were one million dollars, the same as the policy limits for general liability insurance coverage. Appellant insists that the applicable limit under the statutes and under the policy provisions was $25,000.

After careful consideration, we are of the opinion that the position of appellant is correct, and the judgments of the lower courts are accordingly modified.

### A. *The Factual Background*

There is almost no dispute as to the facts concerning the underwriting involved in this case. The policy in question was a renewal policy. Appellant Aetna Casualty and Surety Company had underwritten the liability and related casualty coverage for Textron, Inc., and its subsidiaries for many years prior to 1983. During each year of coverage the policy provisions and the amount of insurance coverage to be purchased were discussed between the insurance carrier and the insured, and the policy was a negotiated policy each year. During the year 1982 the proof shows that there were two separate meetings between representatives of the insurance carrier, the underwriting broker and the insured, and there were numerous other communications among these parties before the policy terms were agreed upon. The policy was written upon a retrospective basis—that is, an estimated premium was paid in advance, but this premium was subject to adjustment at the end of the policy period in accordance with the loss experience. In effect, the named insured, Textron, Inc., would have to share in the loss experience or in the premium cost if limits of liability greater than those actually negotiated were held to be applicable in any given state or under any given circumstances. The trial court deemed this immaterial, but in our opinion it is most significant because, if the coverage is held to be other than as provided in the explicit terms of the policy, the named insured must bear at least some of the additional premium cost or some of the related loss. The record shows that there was a separate contract or agreement between Atena and Textron, Inc., concerning retrospective adjustment of costs and premiums, but this was not

placed in evidence, and its terms are not before us.

The trial judge held a separate non-jury hearing concerning the uninsured motorist coverage. The evidence showed that either the insurance broker or Textron, Inc., had provided each additional insured, such as Mr. Burns, with an "accident kit" advising each insured that coverage was available through Aetna Casualty and Surety Company and giving information as to the location of various claims offices throughout the United States to which an accident could be reported. The kit contained the commercial fleet policy number together with forms for reporting an accident. It contained no information concerning any of the policy limits for the various coverages provided.

At some time before his accident in October 1983 the husband of appellee had been provided with such a kit, although whether this was done during the particular policy year in question or at some previous time does not appear from the record. The kit contained the name of the underwriting broker, Frank B. Hall & Company of Boston, Massachusetts, as well as addresses of the various Aetna claims offices.

The record is silent as to whether a new or different policy number was assigned to the 1983 renewal policy, or whether that policy number was a continuation of the number assigned to previous policies. The testimony was that Aetna had underwritten the casualty coverage for Textron for some twenty to thirty years before 1983.

Mr. Thomas E. Quinn, manager of underwriting for national accounts for Aetna, testified at the hearing. Parts of his discovery deposition were read in evidence by counsel for appellee, and he was then examined by counsel for appellant. He testified that he had been the supervising underwriter in charge of negotiating and issuing the casualty policies for Textron for 1983. When asked who was present at those negotiations, he testified:

"A. Myself, two of my superiors who worked for the Aetna, two other members of our Boston National Accounts Office, and three members of the broker

of Frank B. Hall, and three members of the insured, Textron."

He testified that there was a "prerenewal meeting at Sturbridge, Massachusetts" and "a renewal meeting later on in the fall of that year at Providence, Rhode Island." He testified that there were many other contacts among the parties by telephone, in addition to those two meetings.

He testified that the broker was the agent who procured the business for Aetna and that the policy in question was a renewal policy from the previous year. He said that when he was advised that Aetna had the business again for 1983 the policy was constructed or prepared in Hartford, Connecticut, under supervision of the witness and members of his staff. It was then mailed to a Boston branch office of Aetna and there delivered to the broker's office in Boston. It was then delivered by the broker to Textron in Providence, Rhode Island. The record shows that Textron has no administrative offices located in the State of Tennessee.

Mr. Quinn testified that the premium charged to Textron reflected the different uninsured motorist limits scheduled in the policy for the respective states and that the premium would be higher if additional limits of coverage were provided.

The policy, of course, providing comprehensive fleet coverage, covered all of the vehicles owned by or leased to Textron and its subsidiaries. The number of vehicles covered had to be estimated at the beginning of the policy year and was subject to adjustment and audit at the end of the year to arrive at a premium "on the average number of vehicles that we have any one day."

A copy of the actual policy as underwritten by Aetna was filed in the record and admitted to be accurate. At the hearing it was further stipulated that:

"... a specimen policy of this comprehensive policy that I have here that they gave me said it was in force, was filed in Nashville by Aetna. And it is filed—on file with Aetna as required when they are licensed to do business in this state.

So the policy has been delivered to the Commissioner of Insurance and Banking and filed in this state."

This stipulation, in the form of the foregoing statement of counsel, is all that the record contains. There is no statement as to when the specimen was filed, or what the purpose of the filing was; nor is there any citation to any applicable statute or regulation of the Insurance Commissioner in the record. There is, of course, no claim that the "specimen" filed had anything to do with Textron or its coverage, nor is there any showing that it had anything to do with the particular policy year involved or the premium charged for coverage during 1983.

Endorsement 46 to the policy, dealing with uninsured motorist coverage in Tennessee, contained the standard provision that the insurance carrier would pay all sums which the insured was legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. It expressly stated that regardless of the number of covered automobiles, insureds, claims made or vehicles involved in an accident, the maximum which the company would pay for all damages resulting from any one accident was the limit provided in the declarations—in this instance $25,000.

## B. *The Tennessee Statutes*

Uninsured motorist legislation in this state originated with 1967 Tenn. Pub. Acts, ch. 371. The statutes had been amended on several occasions prior to the accident involved in this case. The statutes originally required underwriters to provide uninsured motorist coverage with limits at least equivalent to those required under the state's Financial Responsibility Law, T.C.A. §§ 55–12–107 *et seq.* unless the named insured rejected the coverage. Subsequent provisions were made for under-insured coverage as well as uninsured coverage. The coverage has never been mandatory although the statutes have been revised so as to require the insurance carrier to offer the insured limits at least equal to those carried by the insured for general liability coverage. The statutes in force in

1983 contemplated policies with multiple insureds and gave the named insured, rather than any additional or omnibus insured, control of the underwriting and of the selected coverage. T.C.A. § 56–7–1201(a).

Shortly before the renewal policy took effect in the present case on January 1, 1983, 1982 Tenn. Pub. Acts, ch. 835, went into effect, requiring uninsured limits at least equal to those provided for bodily injury liability limits, but with the provision that any named insured might reject in writing such uninsured motorist coverage completely or might select lower limits of such coverage, but such lower limits should in no event be less that the limits required by the financial responsibility law above referred to. The action of the named insured was to be binding "upon every insured to whom such policy applies...." T.C.A. § 56–7–1201(a).

The record shows that Aetna prepared a form to be furnished each of its Tennessee policyholders so that they might reject uninsured motorist coverage if desired, or that they might select a specified amount of such coverage. No such form was executed by Textron in the present case, nor was any such form furnished it in connection with the 1982 underwriting for 1983. The statute, however, T.C.A. § 56–7–1201(a) only applies to automobile liability policies

"... delivered, issued for delivery, or renewed in this state",

covering liability arising out of the ownership, maintenance or use of any motor vehicle designed for use primarily on public roads in Tennessee and registered and principally garaged in Tennessee.

The principal points of contention between the parties are whether or not the Textron policy could be deemed to have been "delivered, issued for delivery, or renewed in this state," and, if so, whether or not there had been compliance with the statutory underwriting requirements. Both of these issues were resolved against the insurance carrier and decided in favor of appellee by the trial court, whose opinion was adopted without additional comment by the Court of Appeals.

An additional statute relied upon by the appellee is a general provision having its origin in 1907 Tenn. Pub. Acts, ch. 441, and codified at T.C.A. § 56–7–102, providing that every policy of insurance issued to or for the benefit of any citizen or resident of this state by any insurance company doing business in the state

"... shall contain the entire contract of insurance between the parties to said contract, and every such contract so issued shall be held as made in this state and construed solely according to the laws of this state."

It will be recalled that the contracting parties to the contract of insurance involved in this litigation were Textron, Inc., and Aetna Casualty and Surety Company. Mr. Burns was not a contracting party although he was, like numerous other employees of Textron, an additional insured under the comprehensive fleet plan.

The courts below held that the policy of uninsured motorist insurance "was clearly issued for the benefit of Gary L. Burns."

The courts below further held that the Textron policy had in effect been delivered in each state where each of the sixteen hundred vehicles in the fleet was garaged or located.

### C. *Our Conclusions*

■ We respectfully disagree with the courts below as to both of the issues. Delivery of a policy of insurance, when required, is the act which makes the contract operative or binding between the contracting parties. *See* 1B J. Appleman, *Insurance Law and Practice* § 131 (1981).

■ A fleet insurance policy, designed to cover a number of vehicles, is considered to constitute a single contract. *See* 6B J. Appleman, *Insurance Law and Practice* § 4291.5 (1979). The undisputed proof in the present case is that the policy in question was issued in Hartford, Connecticut and delivered to the insured in Providence, Rhode Island through a broker in Boston, Massachusetts. It is not a Tennessee contract, in our opinion, even though it is obviously a comprehensive fleet policy designed to meet the insurance needs of the named insured and its employees in each of the states in which covered vehicles were utilized or garaged. The scheduled insurance for uninsured motorist coverage in Tennessee, twenty-five thousand dollars, exceeds the minimum required in the state under the financial responsibility law. This limit was selected by the named insured after lengthy negotiations with the insurance carrier and the broker, and nothing in Tennessee law or public policy requires any greater limits than those provided in the policy schedule.

It is insisted by appellee that a "constructive delivery" of this policy occurred in Tennessee because of the filing of a specimen with the Commissioner of Insurance. As stated previously, the record is completely undeveloped with respect to the facts surrounding such filing or as to its legal significance. Appellee places principal reliance upon a brief portion of an opinion of an intermediate appellate court in the case of *Fenasci v. Travelers Insurance Co.*, 642 F.2d 986 (5th Cir.1981), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 971, 71 L.Ed.2d 110 (1981). There it was held that the filing of a policy with the Insurance Commissioner's Office of Louisiana constituted "delivery" in that state for the purpose of "stacking" coverage. There is no discussion of the facts or citation of authority. The Court also upheld a finding of "constructive delivery" in Louisiana from the intention of the parties.

The only case cited by the federal court on the latter proposition was *Pruitt v. Great Southern Life Insurance Co.*, 202 La. 527, 12 So.2d 261 (1942) in which the term "constructive delivery" was used in its ordinary sense where a policy of insurance had in fact been issued by a life insurance company and sent to its soliciting agent for actual delivery to the insured. The loss occurred before actual delivery took place, but "constructive delivery" was found to have been accomplished.

■ In our opinion the concept of "constructive delivery" is inapplicable to the facts of the present case. There had been actual delivery to the named insured on or

before January 1, 1983, and there never was any contemplation that there would be any other kind of delivery to the additional insureds under the omnibus coverage of the policy. The actual delivery did not occur in the State of Tennessee, nor did the issuance or renewal of the policy occur here, so that, in our opinion, the underwriting requirements of T.C.A. § 56–7–1201 were not applicable.

Even if they were applicable, the intent and purpose of the statutory requirements have clearly been met. This was not a case of an insurer issuing a policy to an unsophisticated insured who had no opportunity to choose or select the uninsured motorist coverage which was desired. The coverages in the present case were negotiated at arm's length over a long period of time, and the issued policy clearly complied with the intention of the contracting parties. Under the facts of this case, in our opinion, the named insured, Textron, would not have been entitled to have this policy reformed to provide larger limits of uninsured motorist coverage. The rights of an additional or omnibus insured can rise no higher than, but are clearly controlled by, the choices and selections of coverage made by the named insured as provided in T.C.A. § 56–7–1201.

The fact that the particular Aetna form created for Tennessee policyholders was not used in this case, is, in our opinion, without legal significance. Nor do we find that the general provisions of T.C.A. § 56–7–102 make this a Tennessee contract. That statute was designed to protect Tennessee policyholders. *See Virginia Surety Co. v. Knoxville Transit Lines*, 135 F.Supp. 606, 618 (E.D.Tenn. 1955). Mr. Burns was not a policyholder. He did not negotiate the policy or pay its premiums.

In our opinion the facts of this case are similar to and are controlled by the principles stated in the case of *Goode v. Daugh-*

*tery*, 694 S.W.2d 314 (Tenn.App.1985). There a Tennessee insured had selected specific limits of uninsured motorist coverage prior to the effective date of 1982 Tenn.Pub. Acts, ch: 835, the statute relied upon by appellee in the present case. That statute became effective on September 1, 1982.

After the effective date of the statute the named insured, through his wife, renewed his uninsured motorist coverage with the same limits. After an accident occurred, it was claimed that since there had not been a new selection made or a new rejection of limits lower than those provided for liability for bodily injury, the policy must be reformed to reflect the higher limits. The trial court so held, but the Court of Appeals reversed and found that there was no basis for any reformation between the contracting parties. It held that the 1982 statute did not require a new selection or rejection by a named insured who had already had an opportunity to make such selection prior to the effective date of the statute.[1] This was also the holding of the federal court in *Fenasci v. Travelers Insurance Company, supra,* relied upon by appellee in another connection.

The facts of these cases are similar to the facts of the present case, where the named insured had negotiated its casualty coverage each and every year and had been given an opportunity to purchase whatever limits it desired for each of the coverages. Even if the Tennessee statutes were applicable to this policy, they were effectively complied with here as they were by the insurer in the *Goode* case, *supra.* There was no occasion for a new or separate execution of a Tennessee form after September 1, 1982 with respect to this renewal policy, where lower limits had previously been deliberately chosen after extended negotiations, and the policy was thereafter renewed.

---

1. A portion of the 1982 statute, now codified at T.C.A. § 56.7–1201(a) provides that unless the named insured subsequently requests higher uninsured motorist limits,

"... the rejected coverage need not be included in or supplemental to any continua-

tion, renewal, reinstatement or replacement of such policy ... where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer...."

The judgments of the courts below are modified so as to provide that uninsured motorist coverage available to appellee in this case is twenty-five thousand dollars. The uninsured motorist and the owner of the vehicle which he was driving did not appeal. Accordingly it is not necessary for us to deal with the other issues presented in the briefs.

The cause will be remanded to the trial court for any further proceedings which may be necessary. Costs on appeal are taxed one-half to appellee and one-half to appellant. All other costs will remain as adjudged in the trial court.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.