**INTEGRITY INSURANCE COMPANY, in Rehabilitation**

v.

**Barbara M. DUDNEY, et al.**

**No. 3–87–0059.**

United States District Court, M.D. Tennessee, Nashville Division.

April 23, 1990.

Howden to Dudney Defendants' Objections to Report and Recommendation; the plaintiff's Objections to the Report and Recommendation of Magistrate and Motion for De Novo Determination; a Memorandum in Support of Plaintiff's Objections to Report and Recommendation of Magistrate and Motion for De Novo Determination; the Objections of Alexander Howden North America, Inc., Alexander Howden Insurance Services, Inc., and Alexander Howden Group U.S., Inc. to the Magistrate's Report and Recommendation; the Response of Great Republic Excess & Surplus, Inc. to the Objections of the Howden Defendants and Integrity to the Report and Recommendation of the Magistrate; and the Dudneys' Response to Objections of Integrity and Alexander Howden to Report and Recommendation of Magistrate.

## INTRODUCTION

In this action the plaintiff, Integrity Insurance Company, is suing for a declaratory judgment that it did not provide uninsured or underinsured motorist coverage to the Dudneys. In the alternative, Integrity seeks a declaration for a $5,000,000 limit for any uninsured motorist coverage for the Dudneys under the insurance policy issued to the Dudney defendants by Integrity. Finally, Integrity seeks a declaration that it is entitled to indemnification from Great Republic for any uninsured motorist coverage over $5,000,000 that it must provide to the Dudneys and for any costs that Integrity incurs in defense of the Dudneys' state court action.

In response to Integrity's complaint, several of the remaining defendants asserted counter-claims or cross-claims against Integrity and/or other defendants.

The Dudney defendants asserted counterclaims against Integrity and the Alexander Howden defendants to enforce their insurance contract with Integrity and the Alexander Howden defendants.

The Alexander Howden defendants asserted cross-claims against Great Republic and the Frost defendants for breaches of their duties to the Alexander Howden de-

Thomas M. Donnell, Jr., Jerry W. Carnes, W. Stuart Scott, Stewart, Estes & Donnell, Nashville, Tenn., for plaintiff.

Barry L. Howard, Gracey Howard & Sowell, James F. Neal, Aubrey B. Harwell, Jr., Thomas H. Dundon, and Douglas Fisher, Thomas Pinckney, and W. Bryan Brooks, Michael P. Mills and Brenda N. Phillips, Brewer, Krause & Brooks, Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court are the following documents: the Magistrate's Report and Recommendation; the Dudney Defendants' Objections to the Report and Recommendation; the Response of Alexander

fendants in the sale of an insurance policy to the Dudney defendants.

## DISCUSSION

In the Report and Recommendation the Magistrate made the following recommendations: (1) that the Dudney defendants' motion for summary judgment be granted; (2) that the Alexander Howden defendants' motion for summary judgment be denied; (3) that the Great Republic motion for summary judgment be granted; and (4) that Integrity's motion for summary judgment be denied.

The plaintiff essentially objects to the Magistrate's recommendation that the Dudney defendants' motion for summary judgment be granted, that the Great Republic motion for summary judgment be granted and that the plaintiff's motion for summary judgment be denied.

The Alexander Howden defendants essentially object to the Magistrate's recommendation that summary judgment be granted for the Dudneys and Great Republic. The Alexander Howden defendants also object to the failure of the Magistrate to consider their motion for summary judgment against the Frost defendants.

The parties have objected to numerous portions of the Magistrate's Report and Recommendation. The Court finds that many of the objections are clearly without import to the analysis or conclusions reached by the Magistrate and the Court. These objections are not considered in the body of this Memorandum and are DE-NIED. Those objections that contain some merit are reviewed below.

### 1. *Standard of Review*

Local Rule 302(i)(1) of the Local Rules Governing Duties of and Proceedings Before Magistrates provides in part that:

The District Judge shall consider the written objections ... and shall ... make a *de novo* determination of all matters objected to, and shall issue a written memorandum opinion and an appropriate order disposing of the issues raised.

The Court has conducted a *de novo* examination of the matters to which the parties have objected and hereby ADOPTS in part and REJECTS in part the Magistrate's Report and Recommendation.

### 2. *Integrity Insurance Company's Objections to the Magistrate's Report and Recommendation*

#### a. The Dudney Defendants' Motion for Summary Judgment

The plaintiff, Integrity Insurance Company, objects to the Magistrate's recommendation that the Dudney defendants' motion for summary judgment should be granted. For the reasons stated below, the Court ADOPTS the Magistrate's recommendation that the Dudney defendants' motion for summary judgment should be granted.

The Magistrate recommended that summary judgment should be granted in favor of the Dudney defendants because the Magistrate determined that under Tennessee law uninsured or underinsured motorist insurance was included in the Dudney-Integrity insurance contract and was not rejected by the Dudney defendants. The Magistrate, in reaching his recommendation, relied, in part, on Tennessee Code Annotated § 56–7–1201(a). Tennessee Code Annotated § 56–7–1201(a) provides, in pertinent part:

(a) *Every automobile liability insurance policy* delivered, issued for delivery, or renewed in this state, covering liability arising out of the ownership maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, *shall include uninsured motorist insurance,* subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

(1) *The limits of such motorist coverage shall be equal to the bodily injury liability limits stated in the policy.*

(2) Provided, however, that *any named insured may reject in writing such uninsured motorist coverage* completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55–12–107. Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto.

(emphasis).

The Magistrate also relied upon a Tennessee rule of construction by which contracts for insurance which are ambiguous are construed against the insurer and in favor of the insured. *See, Palmer v. State Farm Mutual Automobile Insurance Company,* 614 S.W.2d 788, 789 (Tenn. 1981).

The plaintiff has essentially three objections to the Magistrate's recommendation that the Dudney defendants' motion for summary judgment be granted: 1) that "there are genuine issues of material fact with respect to whether or not the requirements of T.C.A. § 56–7–1201 *et seq.* with respect to rejection of uninsured motorist coverage have been satisfied[;]" 2) that there is a genuine issue of material fact as to whether a written rejection of uninsured motorist insurance is needed in all cases; and 3) that "there are genuine issues of material fact with regard to whether the policy should be reformed so as to exclude uninsured motorist coverage." (Memorandum in Support of Plaintiff's Objections to Report and Recommendation of Magistrate and Motion for De Novo Determination, at pp. 4–5 and 18).

i. *There are No Genuine Issues of Material Fact With Respect to Whether or Not the Dudney Defendants Rejected T.C.A. § 56–7–1201's Automatic Uninsured Motorist Coverage*

██ The Magistrate concluded that because the Dudney defendants did not reject

**1.** Tennessee Code Annotated § 56–6–124 is now

uninsured motorist coverage that T.C.A. § 56–7–1201(a) operated to include uninsured motorist coverage in the 1983 policy.

The plaintiff argues that Robert Frost was the legal representative of the Dudney defendants, that Robert Frost signed Binder 617 which excludes uninsured motorist insurance on their behalf, and that T.C.A. § 56–7–1201(a)(2) allows for the legal representative of the insured to reject uninsured motorist coverage. The Magistrate rejected this argument on the basis of Tennessee Code Annotated § 56–6–124 [1]. T.C.A. 56–6–124 provides in pertinent part:

Every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer, be regarded as the agent of the insurer and not the insured or his beneficiary. This provision shall not affect the apparent authority of an agent.

The Magistrate concluded that the operation of T.C.A. 56–6–124 conclusively established that Robert Frost was the agent of the plaintiff and thus precluded the possibility that Robert Frost was acting as the Dudney defendants' legal representative.

The plaintiff attempts to argue that this statute is inapplicable to the present situation because Robert Frost was acting as an insurance broker for the Dudneys and *not* as an insurance agent. The plaintiff argues that there is a genuine issue of material fact as to whether Robert Frost was serving as an insurance agent for the Dudneys, or whether Robert Frost was serving as an insurance broker.

This line of argument is not persuasive for two reasons. First, Tennessee case law uniformly holds that T.C.A. 56–6–147 and its predecessor section are intended to benefit the insured, *Driver v. Tennessee Farmers Mutual Insurance Company,* 505 S.W.2d 476, 479 (Tenn.1974) and *American Bankers Life Assurance Company v. Tri–City Bank & Trust Company,* 677

Tennessee Code Annotated § 56–6–147.

F.2d 28, 30 (6th Cir.1982), and that it is to be liberally construed in favor of the insured. *T.H. Hayes & Sons v. Stuyvesant Insurance Company*, 194 Tenn. 35, 42–43, 250 S.W.2d 7, 10–11 (1952). Following this pro-insured approach to the construction of insurance contracts, Tennessee courts have applied this statute to almost any kind of independent solicitor who solicited insurance policies that are accepted and issued by the insurer. *See e.g., T.H. Hayes & Sons v. Stuyvesant Insurance Company*, 194 Tenn. 35, 42–43, 250 S.W.2d 7, 10–11 (1952).

Secondly, in addition to the cases holding that T.C.A. § 56–6–147 was designed to benefit insured, at least one Tennessee case has stated that T.C.A. § 56–6–147 applies to insurance brokers as well as insurance agents.

Recently, in *Polk and Sullivan, Inc. v. United Cities Gas Company*, 783 S.W.2d 538 (Tenn.1989), the Tennessee Supreme Court reversed the decision of the Tennessee Court of Appeals and reinstated the decision of the trial court on an issue analogous to the situation in the present case. In *Polk and Sullivan*, an insurance broker was suing an insured for a commission on an insurance policy which the insurance broker had procured for the insured. The trial court relied on T.C.A. 56–6–124 to find that the insurance broker was the agent of the insurance carrier and not the insured and that therefore the insurance broker was not entitled to collect a commission from the insured. The Tennessee Court of Appeals reversed. In reinstating the opinion of the trial court the Tennessee Supreme Court stated:

> The Chancellor found in favor of [the insured] upon this portion of the [insurance broker's] claim, finding that an insurance broker is the agent of the insurance carrier and not the insured, and questions concerning commissions are to be settled between the broker and the insurance carrier. The Chancellor relied on T.C.A. § 56–6–124, which then provided that every agent 'who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith' 'be regarded as the agent of the insurer and not the insured....'
>
> The [insured] is under no obligation to pay any more than the contract of insurance provides and [the insurance broker] must look to [the insurance company] if they are dissatisfied with the commission they received. The judgment of the Court of Appeals is reversed and the judgment of the trial court in regard to this issue is reinstated.

783 S.W.2d at pp. 541–41. The Tennessee Supreme Court's decision recognizes that T.C.A. 56–6–124 applies to insurance agents and insurance brokers alike. This decision indicates that if a Tennessee court were to analyze the application of T.C.A. § 56–6–124 to this situation it would find that Robert Frost is the agent of the insurance company and not the insured.

However, even if the plaintiff could show that there was a distinction between an insurance agent and an insurance broker for the purposes of applying T.C.A. § 56–6–147, the Court's conclusion that summary judgment should be granted in favor of the Dudney defendants would not change. The plaintiff has not come forth with proof sufficient to enable a fair-minded jury to determine that Robert Frost was the Dudneys' legal representative.

Under the Supreme Court's decision in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the plaintiff, in order to survive a defendant's motion for summary judgment, must present "evidence on which the jury could reasonably find for the plaintiff." Construing the evidence in the light most favorable to the plaintiff, the Court finds that the plaintiff has not come forward with the requisite proof to support its legal claim that Robert Frost was the Dudney defendants' agent.

Binder 617 shows that Robert Frost signed as "G. Robert Frost." Robert Frost did not sign as "Robert Frost for the Dudneys." It was the normal policy of the Frost Insurance Company for all binders to be signed by a representative of the Frost

Insurance Company. Thus, the fact that Robert Frost signed the binder indicates nothing more than that a representative of the Frost Insurance Company signed the Binder. The plaintiff has offered no evidence that Mr. Frost was authorized or instructed to sign the binder on behalf of the Dudneys. Similarly, the plaintiff has presented no proof that Mr. Frost represented to the plaintiff that he was signing the insurance binder on behalf of the Dudneys. Mr. Dudney testified that Frost had no authority to sign his name on any document. There is no genuine issue of material fact concerning the issue of whether Robert Frost was the Dudneys' legal representative.[2]

ii. *There is No Genuine Issue of Material Fact as to Whether a Written Rejection of Uninsured Motorist Insurance Coverage Was Required*

■ The plaintiff contends that even if there was no written rejection of the uninsured motorist coverage by the defendant Dudneys or the Dudney's legal representative that there is a genuine issue of material fact as to whether the requirement of T.C.A. § 56–7–1201(a)(2) had to be complied with in the present case. The plaintiff relies upon *Burns v. Aetna Casualty & Surety Co.*, 741 S.W.2d 318 (Tenn.1987) for the proposition that under certain factual circumstances a formal written rejection of uninsured motorist coverage by the insured under T.C.A. § 56–7–1201(a)(3) may not be required. The Court finds *Burns* to be inapposite for the persuasive reasoning discussed in the Magistrate's Report and Recommendation. (Report and Recommendation of the Magistrate, pp. 25–6.). The Magistrate distinguished *Burns* from the present case by focusing on the sophis-

ticated nature of the insured in *Burns* and by concentrating on the extensive negotiations that took place between the insured and the insurer over a long period of time. In addition to the factors which led the Magistrate to find that the present case is distinguishable from *Burns*, this Court notes that the insured in *Burns* was a large conglomerate operating a fleet of approximately one thousand six hundred vehicles which were garaged in nearly every state of the United States and that the insured had dealt with its insurance company for a period of many years. The insured corporation in *Burns* negotiated thirty three special endorsements dealing solely with the issue of uninsured motorist liability. One of these special endorsements, number forty-six, dealt specifically with uninsured motorist coverage in Tennessee. Taking the evidence in the light most favorable to the plaintiff, this Court finds that the defendants have failed to marshal any proof suggesting that there is a genuine issue of material fact regarding whether the Dudney defendants are in any way comparable to the insured in *Burns*.

iii. *There are No Genuine Issues of Material Fact With Regard to Whether the Policy Should be Reformed so as to Exclude Uninsured Motorist Coverage*

■ The Magistrate determined that the insurance contract should not be reformed because there was no clear and cogent proof of any "clear understanding" that the Dudney defendants wanted to exclude the uninsured motorist coverage from the insurance policy. The plaintiff argues that the Magistrate incorrectly applied the stan-

**2.** The Court rejects the plaintiff's argument that "even if the Frost defendants are constituted as Integrity's agents by virtue of the statute, that does not resolve the question of whether Frost qualifies as the Dudneys' 'legal representative' within the meaning of T.C.A. § 56–7–1201(a)(2)." The Court rejects this argument for two reasons. First, to hold that Robert Frost could serve as the insurance company's agent at the same time he was serving as the Dudneys' legal representative would effectively nullify T.C.A. § 56–6–124. As the Magistrate has correctly pointed out, it is this Court's duty

in construing Tennessee law "to construe a statute so that no part will be inoperative, superfluous, void, or insignificant, and the one section will not destroy another; and further to give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn.1975). Secondly, as pointed out above, the plaintiff has failed to present sufficient proof so that a reasonable jury could find that Robert Frost was the Dudneys' legal representative.

dard contained in *Anderson v. Liberty Lobby* for determining whether to grant a motion for summary judgment. The plaintiff asserts that even under the heightened evidentiary standards imposed by *Anderson v. Liberty Lobby,* there are still genuine issues of material fact that preclude the granting of the Dudney defendants' motion for summary judgment. Essentially, the plaintiff argues that because Integrity, Alexander Howden, Great Republic, and the Frost defendants all intended that uninsured motorist coverage would not be supplied by the insurance contract, that the insurance contract should be reformed to reflect this fact. The plaintiff does not address what the Dudney defendants' intent was with regard to the uninsured motorist coverage. The Dudney defendants have come forward with proof to show that they did not waive uninsured motorist insurance and that they had no discussions with Robert Frost about uninsured motorist insurance until after the accident. While the plaintiff argues that it has come forward with proof that Robert Frost discussed uninsured motorist coverage with Kenneth Dudney, it appears that Frost's testimony is not based upon his recollection of a particular conversation with Kenneth Dudney so much as it is based Robert Frost's *assumption* that he discussed the uninsured motorist coverage because he typically does discuss it in situations such as this. The plaintiff has failed to come forward with evidence sufficient to create any genuine issues of material fact about whether there was "clear and cogent" proof of any "clear understanding" that the Dudney defendants intended to reject uninsured motorist insurance.

Additionally, this Court holds as a matter of law that the insurance contract can not be reformed in the manner desired by the plaintiff because such reformation would nullify the clear requirement of T.C.A. § 56-7-1201(a) that uninsured motorist insurance can not be excluded from an insurance contract unless that contract is accompanied by a written rejection of the uninsured motorist coverage.

 b. The Magistrate's Recommendation that the Limits of Coverage Available to the Dudney Defendants Under the Personal Endorsement to the Policy is $10,000,000

■ The Magistrate concluded that under Tennessee law the Dudney defendants' insurance policy covered uninsured motorist coverage in the amount of $10,000,000. The plaintiff argues that the personal liability limits of the insurance policy should be only $5,000,000. The plaintiff asserts that there are genuine issues of material fact as to whether the parties intended for the insurance policy to cover $10,000,000 or $5,000,000 in liability. The plaintiff states that when Carl Bundy of Great Republic obtained a renewal quotation from Merele Jones of Alexander Howden, that Carl Bundy told Robert Frost that the renewal policy would have a $5,000,000 limit on the personal umbrella endorsement. Frost denies that Great Republic told him that the coverage would be reduced to $5,000,000 until after the Dudney defendants' accident. While there is a factual dispute regarding whether Robert Frost was informed that the coverage would be reduced to $5,000,000, this factual dispute is immaterial. The material question—whether the Dudney defendants were informed that the coverage would be reduced to $5,000,000— is not in dispute.[3] The Dudney defendants were not so informed until five months after the accident[4]. Tennessee law recog-

---

**3.** The plaintiff argues that it was the intention of the parties to reduce the limits of the personal umbrella coverage from $10,000,000 to $5,000,000. However, the plaintiff has not come forward with any evidence which would suggest a genuine issue of material fact as to the intentions of the Dudney defendants. In fact, as has been previously mentioned, the Dudney defendants were not notified about the reduction in coverage until several months after the accident. The issuance of the Binder without the

reduction of coverage desired by the plaintiff and Alexander Howden could not have been contrary to the intention of the Dudney defendants since the Dudney defendants were not notified about the proposed reduction until after the accident.

**4.** As has been previously discussed, the operation of T.C.A. § 56-6-147 precludes the plaintiff from arguing that Robert Frost was the Dudney defendants' agent and that his knowledge of the

nizes that an insurer's proposed change in the terms of an insurance policy that is not communicated to the insured prior to the binding of a renewal does not become part of the contract. *Brewer v. Vanguard Insurance Company*, 614 S.W.2d 360, 363 (Tenn.App.1980). Thus, the Magistrate's recommendation that the limit of the policy is $10,000,000 is correct.

c. The Magistrate's Recommendation that Great Republic is Entitled to a Judgment as a Matter of Law

The Magistrate recommended that summary judgment be granted in favor of Great Republic with respect to the Alexander Howden defendants and the plaintiff's claims against Great Republic. The plaintiff asserts that if the plaintiff is liable to the Dudney defendants, then the plaintiff is entitled to recover against Great Republic because of Great Republic's negligence in failing to inform either the Alexander Howden defendants or the plaintiff that the insurance policy issued in 1983 failed to contain an exclusion of uninsured motorist insurance or a waiver form for the Dudney defendants to complete rejecting uninsured motorist coverage, and further that Great Republic was negligent in failing to inform Robert Frost that the renewal policy would have coverage limits reduced to $5,000,000 for the personal liability endorsements.

More specifically the plaintiff argues that the Magistrate erred in concluding that: i) Georgia law is controlling with respect to Integrity's tort and indemnity claims against Great Republic; and ii) Great Republic owed no legal duties to Integrity and the Integrity's complaint therefore fails to state a claim against Great Republic.

i. *Georgia Law Governs Integrity and the Alexander Howden Defendants' Tort Claims Against Great Republic*

■■■ In a case over which a federal district court has jurisdiction on diversity grounds, that court must follow the substantive law of the state in which the court

is located. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Included within this substantive law are the conflict of law rules of the forum state. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and *Agriculture Services Association v. Ferry–Morse Seed Co.*, 551 F.2d 1057 (6th Cir.1977). In the present case the forum state is Tennessee. In tort actions, Tennessee follows the rule of *lex loci delicti*. This expression means simply that the law of the place where the wrong occurs governs. *Bailey v. Chattem, Inc.*, 684 F.2d 386 (6th Cir.1982); *Trahan v. E.R. Squibb & Sons, Inc.*, 567 F.Supp. 505 (M.D. Tenn.1983); *Winters v. Maxey*, 481 S.W.2d 755 (1972).

■■■ The plaintiff cites *Bailey v. Chattem* for the proposition that if a tort occurs in more than one state then the place of the wrong is the state where the last event necessary to make the actor liable took place. From this premise the plaintiff then argues that the last event necessary to make Great Republic liable to the plaintiff was the automobile accident of September 11, 1984 giving rise to a claim for uninsured motorist benefits under the Integrity policy in question. This analysis is incorrect because the plaintiff's premise is incorrect. There have been no allegations or evidence that Great Republic committed any act outside of Georgia. Great Republic has committed only two allegedly tortious acts: 1) Great Republic failed to tell the plaintiff and the Alexander Howden defendants that Howden had issued the policy to the Dudney Defendants before obtaining a signed waiver of underinsured or uninsured motorist insurance; and 2) Great Republic failed to tell Frost that the plaintiff intended to reduce the limits of the policy from $10,000,000 to $5,000,000. At all times Great Republic was in Georgia. The alleged torts did not occur in more than one state—they occurred in Georgia. Thus, the law of Georgia controls this issue.[5]

reduction in coverage should be imputed to the Dudney defendants.

**5.** Because the plaintiff joins with the Alexander Howden defendants in arguing that the Magistrate incorrectly applied Georgia law, the Court

### ii. *Great Republic Owed No Legal Duties to Integrity*

The plaintiff argues that Great Republic owed the plaintiff legal duties as a consequence of Great Republic's position as an insurance broker and also by virtue of an indemnity agreement implied by operation of law.[6] The plaintiff asserts that there is a genuine issue of material fact as to whether an agency relationship existed between the plaintiff and Great Republic. Consequently, the plaintiff argues that the Magistrate's recommendation that no agency relationship existed between the plaintiff and Great Republic is in error.

The plaintiff also objects to the Magistrate's recommendation that Great Republic's failure to inform the plaintiff of the missing forms for rejecting uninsured motorist coverage did not cause any liability to the plaintiff.

Finally, the plaintiff objects to the Magistrate's recommendation that the plaintiff had no implied right of indemnity against Great Republic.

Because the plaintiff is relying heavily upon the Alexander Howden defendants' arguments, the Court will consider both the plaintiff and the Alexander Howden defendants' arguments on these issues below. *See, infra* pp. 1311–14.

### d. The Motion to Dismiss Defendants Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc.

In its complaint, the plaintiff named three separate Alexander Howden corporations as defendants. These three corporations are: Alexander Howden North America, Inc.; Alexander Howden Group U.S., Inc.; and Alexander Howden Insurance

Services, Inc. Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc. filed a motion to dismiss alleging that they should be dismissed from this action because they are no longer in existence and have been succeeded by defendant Alexander Howden North America, Inc. Both the plaintiff and the Alexander Howden defendants object to the Magistrate's Report and Recommendation because the Report and Recommendation failed to address the motion.

The Alexander Howden defendants argue that the motion to dismiss should be granted because no one has contradicted the affidavit of Stacey Tucker that Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc. have been succeeded by defendant Alexander Howden North America, Inc.

The plaintiff argues that the motion should be denied for two reasons: 1) the plaintiff has had depositions scheduled with representatives from the Alexander Howden defendants, that the depositions were cancelled more than once at the request of the Alexander Howden defendants, and that the plaintiff can not therefore refute the allegations contained in Stacey Tucker's affidavit; and 2) even if the statements in Tucker's affidavit were true, the Alexander defendants are not entitled to a judgment as a matter of law.[7]

The Alexander Howden defendants' motion to dismiss is essentially a motion for a judgment on the pleadings. Rule 12 of the Federal Rules of Civil Procedure requires that motions for judgments on the pleadings be treated as motions for summary judgment.

■ As a general rule, the dissolution and termination of the existence of a corpo-

---

6. The plaintiff also relies on the arguments of the Alexander Howden defendants' as additional authority for the plaintiff's objections to this portion of the Report and Recommendation. Insofar as the plaintiff is relying on the Alexan-

will consider the plaintiff's claims along with the Alexander Howden defendants' claims in the section discussing the Alexander Howden defendants' objections to the Report and Recommendation of the Magistrate.

der Howden defendants' arguments, the plaintiff's objections will be discussed in the section concerning the Alexander Howden defendants' objections to the Report and Recommendation.

7. The Court notes that neither the plaintiff nor the Alexander Howden defendants have cited to any type of authority to justify their arguments regarding the motion to dismiss Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc.

ration not only precludes the ability of the corporation to sue, but also precludes the maintenance of actions by others against the corporation. *United States v. P.F. Collier & Son Corp.*, 208 F.2d 936 (7th Cir.1953); 19 Am.Jur.2d, Corporations § 2896.

■ However, in most jurisdictions statutes have been enacted that prolong the capacity of a dissolved corporation to sue or be sued past dissolution. Both Tennessee and Georgia have statutes that are designed to deal with the problem of claims brought against corporations which have dissolved. Tennessee allows actions to be maintained against corporations which have dissolved. *See,* T.C.A. § 48–24–105. Georgia, on the hand, sets up certain hurdles which a corporation seeking to dissolve must meet prior to being immunized from suit after dissolvement. *See,* Ga.Code Ann. 14–2–1406 *et seq.*

The Alexander Howden defendants have failed to come forward with proof sufficient to demonstrate that they are entitled to summary judgment relief. The motion to dismiss, filed by Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc., is DENIED.

3. *The Alexander Howden Defendants' Objections to the Magistrate's Report and Recommendation*

a. The Magistrate's Finding That the Frost Defendants Have All Been Dismissed

At page 2 of the Report and Recommendation the Magistrate states in a footnote that "the Frost defendants were dismissed." The Alexander Howden defendants object to this conclusion. The Howden defendants admit that Frost Agency, Inc. has been dismissed from the case, but the Howden defendants assert that the Robert Frost, individually and Frost Insurance Agency, and Frost Insurance, Inc. have not been dismissed. The Howden defendants also argue that the Magistrate failed to rule on the Howden defendants motion for summary judgment against the Frost defendants.

The Court REFERS this matter to the Magistrate for further consideration of the Howden defendants' motion for summary judgment against the Frost defendants.

b. The Magistrate's Recommendation that the Dudney Defendants Did Not Reject Uninsured Motorist Coverage

■ The Alexander Howden defendants object to the Magistrate's finding that there is no dispute regarding whether the Dudney defendants rejected uninsured motorist coverage. In addition to the arguments raised by the plaintiff on this issue, the Alexander Howden defendants raise two further arguments.

First, the Alexander Howden defendants assert that although T.C.A. § 56–6–124 causes Frost to be regarded as the "agent" of the plaintiff, it does not answer the question of whether Frost qualifies as the Dudney defendants' "legal representative" within the meaning of T.C.A. § 56–7–1201(a)(2). This argument fails. As a matter of law Frost can not be the insurer's "agent" and the insured's "legal representative." Such a construction would render T.C.A. § 56–6–147 meaningless in many situations and would do violence to the legislative intent to protect insureds.

Second, the Alexander Howden defendants contend that T.C.A. § 56–6–124 does not impute Frost's "agency" to the Alexander Howden defendants. Even assuming that the Alexander Howden defendants' contention is correct, the Court's determination, that there are no genuine issues of material fact regarding whether the Dudney defendant did or did not reject the uninsured motorist insurance, does not change. Both the plaintiff and the Alexander Howden defendants have failed to come forward with the proof requisite to establish the claim that there is a genuine issue of material fact regarding whether the Dudney defendants rejected uninsured motorist coverage. There are no genuine issues of material concerning this issue. *See also, supra* pp. 1303–05.

c. The Magistrate's Determination That the 1984 Policy Applied When, at the Time of the Loss, the Dudney Defendants were Covered Only by a Binder

The Alexander Howden defendants object to the Magistrate's determination that the 1984 insurance policy, number ISX904137, applied at the time of the Dudney defendants' accident on September 11, 1984. The Alexander Howden defendants argue that Tennessee law provides that an insured's rights become fixed as of the date of the loss. The Alexander Howden defendants further assert that on the date of the loss, September 11, 1984, the only coverage available to the Dudney defendants was the 1983–84 Integrity policy, number ISX902624, as extended by binder 784. The Alexander Howden defendants finally contend that the 1984 insurance policy could not afford the Dudney defendants any coverage because it was not issued until almost three months after the Dudney defendants' accident.

To the extent that the Magistrate found that the 1984 insurance policy applied, and to the extent the Magistrate's recommendations relied upon this finding, the Court REJECTS the finding and the recommendations and FINDS that on September 11, 1984 the coverage provided to the Dudney defendants was contained in binder 784. The Court notes that the Magistrate's erroneous finding in this regard does not materially affect the Magistrate's ultimate recommendations.

d. The Magistrate's Recommendation That the Insurance Contract Should Not be Reformed to Include a Written Rejection of Uninsured Motorist Coverage

The Alexander Howden defendants object to the recommendation of the Magistrate that the insurance contract should not be reformed to provide a written rejection of uninsured motorist coverage. For the reasons previously stated, the Court finds that the Magistrate's recommendation, that reformation is unwarranted, is correct. *See, supra* pp. 1305–06,

e. The Magistrate's Determination that there was not a Mutual Mistake Sufficient to Reform the Insurance Contract to Include a Written Rejection of Uninsured Motorist Coverage

The Alexander Howden defendants object to the recommendation of the Magistrate that no genuine issues of material fact exist regarding whether there was a mutual mistake sufficient to reform the insurance provided to the Dudney defendants to include a written rejection of the uninsured motorist coverage within the insurance policy issued to the Dudneys. As previously discussed, taking the evidence in the light most favorable to the non-moving party, Integrity and the Alexander Howden defendants, this Court finds that there is no genuine issue of material fact. *See, supra* pp. 1305–06.

f. The Magistrate's Conclusion that T.C.A. § 56–7–1205 is Merely an Anti–Stacking Statute

▮ The Alexander Howden defendants object to the Magistrate's conclusion that T.C.A. § 56–7–1205 is "merely an anti-stacking statute." (Objections of Alexander Howden North America, Inc., Alexander Howden Insurance Services, Inc., And Alexander Howden Group U.S., Inc. To The Magistrates Report and Recommendation, at 36). The Alexander Howden defendants also object to the Magistrate's rejection of the Alexander Howden defendants' assertion that T.C.A. § 56–7–1206 "obviates any requirement that UM coverage is required under this policy." *Id.*

T.C.A. § 56–7–1205 provides:

Nothing contained in this part shall be construed as requiring the forms of coverage provided pursuant to this part, whether alone or in combination with similar coverage afforded under other automobile liability policies, to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55–12–107, or the uninsured motorist liability of the insured's

policy if such limits are higher than the limits described in § 55–12–107. Such forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits.

The Alexander Howden defendants make a statutory construction argument that uninsured motorist coverage can be excluded by the insurer without the insured's written rejection. The linchpin of the Alexander Howden defendants' argument seems to be that the policy purchased by the Dudney defendants only covers losses arising out of the Dudney defendants' liability and that the policy provisions which limit coverage to indemnification of liability losses qualify as "terms, exclusions, limitations conditions and off-sets" within the meaning of T.C.A. § 56–7–1205.

However, as the Magistrate has stated, such an interpretation would allow insurers to unilaterally delete uninsured motorist coverage without the insured's consent. Thus, this interpretation would effectively repeal the Tennessee State Legislature's express requirement that the exclusion of uninsured motorist coverage must be accomplished in writing. The Court agrees with the Magistrate's recommendation that T.C.A. § 56–7–1205 does not obviate the requirement of T.C.A. § 56–7–1201 that uninsured motorist coverage is included in every automobile insurance policy unless the uninsured motorist insurance is rejected by the insured in writing.

g. The Magistrate's Failure to Conclude that the Dudney Defendants Waived or are Estopped From Asserting Their "Right" to Uninsured Motorist Coverage

 The Alexander Howden defendants argue that two events demonstrate that the Dudney defendants have waived or should be estopped from asserting their "right" to uninsured motorist coverage. The first event occurred when the Dudney defendants accepted the coverages outlined in the July 19, 1983 proposal letter, which did not list uninsured motorist coverage among the coverages available. The second event occurred when the Dudney defendants received a binder excluding uninsured motorist coverage and did not attempt to have uninsured motorist coverage added.

The Alexander Howden defendants argue that because the Dudney defendants had a duty to either inquire about or correct the exclusion of uninsured motorist insurance, that when the Dudney defendants failed to fulfill this duty the Dudney defendants waived or should be estopped from claiming the uninsured motorist coverage. The Alexander Howden defendants' argument is not persuasive. This argument is merely another attempt to vitiate the requirement of T.C.A. § 56–7–1201 that an insurer must secure the written rejection of uninsured motorist coverage. The Alexander Howden defendants assert that the Dudney defendants "could have avoided this entire controversy by a simple inquiry on their part." (Objections of Alexander Howden North America, Inc., Alexander Howden Insurance Services, Inc., And Alexander Howden Group U.S., Inc. To The Magistrates Report and Recommendation, at 47). However, the responsibility to ensure that the insured rejects uninsured motorist coverage in writing rests not with the insured, but rather with the insurer.

h. The Magistrate's Determination that Georgia Law Applies to Determine the Tort Liability of Great Republic and/or Alexander Howden

The Alexander Howden defendants object to the Magistrate's recommendation that the law of Georgia applies in the determination of the tort liability of Great Republic to Integrity and/or Alexander Howden. For the reasons previously stated this Court finds that the Magistrate correctly determined that Georgia law applies. *See, supra* p. 1307.

i. The Magistrate's Determination that Great Republic was not the Alexander Howden defendants' and/or Integrity's Agent

The Alexander Howden defendants and Integrity object to the Magistrate's deter-

mination that Great Republic was not, as a matter of law, acting as an agent on behalf of Integrity and/or the Alexander Howden defendants.

The Alexander Howden defendants argue that based upon the facts in the record a reasonable jury could find that Great Republic was an agent of Integrity and/or the Alexander Howden defendants. Thus, the Alexander Howden defendants contend that genuine issues of material fact exist and that Great Republic's motion for summary judgment should be denied. Alternatively, the Alexander Howden defendants argue that Great Republic assumed a duty to accurately convey information between Alexander Howden and Robert Frost and the Dudney defendants.

Similarly, Integrity argues that genuine issues of material fact exist as to whether or not an agency relationship existed between Great Republic and Integrity.

For the purposes of ruling on Great Republic's motion for summary judgment, the Court must examine the evidence in the light most favorable to the non-moving parties—Integrity and the Alexander Howden defendants.

It is undisputed that there was no written agreement memorializing an agreement between Great Republic and Integrity and/or the Alexander Howden defendants. However, Integrity and the Alexander Howden defendants argue that the nature of the parties' relationships gave rise to the principal/agent relationship. An examination of that relationship and the interactions among the parties is thus a necessary prerequisite to any determination.

Integrity was the insurer, the Alexander Howden defendants were the managing general agent, and Great Republic was the insurance broker. Great Republic held itself out as a dealer in excess and surplus lines of insurance, representing that it had relationships and contacts with various insurers and/or their managing general agents. The Dudney defendants, through Robert Frost, approached Great Republic

to secure insurance coverage. Great Republic then contacted the Alexander Howden defendants. After this initial contact, the process of culminating the insurance transaction involved many telephone calls and written correspondence between the parties. Great Republic essentially served as the conduit through which Frost and the Dudney defendants communicated with Integrity and the Alexander Howden defendants.[8] Through this conduit passed communications involving not only the original negotiations, application, binder, premium and policy, but also the renewal negotiations.

■■■ As a preliminary matter, the Court notes that under the law of the State of Georgia, when the existence of an agency is relied upon, the burden of proof rests with the party asserting the agency relationship. *Carter v. Kim,* 157 Ga.App. 418, 277 S.E.2d 776 (1981). However, the determination of whether an agency relationship exists is generally a question of fact for the jury. *Stewart v. Boykin,* 165 Ga.App. 868, 303 S.E.2d 50 (1983); *Allen & Bean, Inc. of Georgia v. American Bankers Insurance Company of Florida,* 153 Ga.App. 617, 266 S.E.2d 295 (1980); *Sheffield v. Lewis,* 151 Ga.App. 801, 261 S.E.2d 726 (1979); *Johnson v. Pennington Insurance Agency,* 148 Ga.App. 147, 251 S.E.2d 116 (1978); *International Brotherhood of Electrical Workers v. A.L. Briscoe,* 143 Ga.App. 417, 239 S.E.2d 38 (1977); *City of Gainesville v. Pritchett,* 129 Ga.App. 475, 199 S.E.2d 889 (1973); 1 Encyclopaedia of Georgia Law, Agency § 45 (1960).

Georgia courts have defined the agency relationship in various ways. The Georgia Supreme Court, citing to the American Law Institute's definition, defined the word agency as: "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Smith v. Merck,* 206 Ga. 361, 57 S.E.2d 326 (1950). In the same case, the Georgia Supreme

---

**8.** The President of Great Republic, Carl Bundy, explained that it was his job to "channel communication." (Bundy Deposition, p. 155).

Court stated: "[t]he word 'agency,' both in law and as used in every-day affairs, may have various meaning. It may refer, and perhaps most often does, to that relation created by express or implied contract or by law, whereby one party delegates the transaction of some lawful business with more or less discretionary power to another, who undertakes to manage the affair and to render an account thereof." *Id.* Another Georgia court has defined an agent as "one who has authority to act for his principal in all matters connected with the particular matter or business, or he may be one who is given entire and general control and management of the matter of business of a particular nature." *Thomas v. Case,* 84 Ga.App. 564, 66 S.E.2d 434, 438 (1951).

■■■■ Under Georgia law a written contract is not essential to the creation of the principal-agency relation. *Clyde Chester Realty Company v. Stansell,* 151 Ga.App. 357, 259 S.E.2d 639 (1979). A Georgia state statute concerning the agency relationship provides:

> The relation of principal and agent applies wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf.

Ga.Code.Ann. 10–6–1.

Georgia provides that the agency relationship may be shown by proof of the circumstances, apparent relations, and the conduct of the parties. *Shirley v. Couch,* 177 Ga.App. 436, 339 S.E.2d 648 (1986); *Clyde Chester Realty Company v. Stansell,* 151 Ga.App. 357, 259 S.E.2d 639 (1979); *Larkins v. Boyd,* 205 Ga. 69, 52 S.E.2d 307 (1949). Agency may also be inferred. *Hutchens v. State,* 174 Ga.App. 507, 330 S.E.2d 436 (1985).

In addition to the duty assumed by agents, Georgia recognizes that one may voluntarily assume a duty of care without necessarily becoming an agent. Georgia follows the rule that when one, by gratuitous promise or other conduct, which one should realize will cause another to reasonably rely upon the performance of definite acts of service by him, causes another to refrain from having such acts done by other available means is subject to a duty to use care to perform such acts or to give notice that he will not so perform. *I.T.T. Terryphone Corp. v. Tri–State Steel Drum,* 178 Ga.App. 694, 344 S.E.2d 686 (1986); *Mixon v. Dobbs Houses,* 149 Ga.App. 481, 254 S.E.2d 864 (1979).

■■■■ Examining the evidence in the light most favorable to the non-moving party, the Court finds that Great Republic assumed to act as a conduit of information between Integrity/Alexander Howden and Robert Frost/Dudney and as a conduit Great Republic had a duty to, at the minimum, convey that information accurately. At some point, prior to the renewal of binder 784 on August 3, 1984, Alexander Howden told Great Republic that there was a reduction in the Dudney's policy limits from $10,000,000 to $5,000,000 on the personal endorsement. This information was supposed to be conveyed to Robert Frost before the renewal binder was issued. Carl Bundy of Great Republic states that he told Robert Frost of the reduction prior to the issuance of the binder. Robert Frost, however, claims that he was not told about the reduction in coverage until after the Dudneys' accident. Thus, a genuine issue of material fact exists as to whether Great Republic breached its duty to accurately convey information between Integrity/Alexander Howden and Robert Frost/Dudney defendants.

The Alexander Howden defendants and Integrity also argue that Great Republic breached its duty by failing to inform Integrity and the Alexander Howden defendants that the insurance policy was missing forms for rejecting uninsured motorist coverage. However, the Alexander Howden defendants and Integrity have failed to come forward with any evidence suggesting that Great Republic had any duty other than to accurately convey information.

Thus, Great Republic's motion for summary judgment is GRANTED insofar as Great Republic was seeking summary judgment on Integrity and Alexander Howden's claims that Great Republic was liable for negligence in failing to have the Dudney

**1314**

defendants sign an uninsured motorist coverage waiver form. Great Republic's motion for summary judgment is DENIED insofar as Great Republic is seeking summary judgment on Integrity and the Alexander Howden defendants' claims that Great Republic's was negligent in failing to convey to Frost in August, 1984 the information that Integrity/Alexander Howden intended to lower the Dudneys' limits from $10,000,000 to $5,000,000.

The Court ADOPTS the Magistrate's recommendation that Great Republic's motion for summary judgment should be granted as to Integrity and Alexander Howden's assertions of implied rights of indemnity for any damages to them by reason of Great Republic's negligence.

An Order will be entered simultaneously with this Memorandum.

### ORDER

For the reasons stated in the contemporaneously issued Memorandum the Court hereby ADOPTS in part and REJECTS in part the Magistrate's Report and Recommendation.

The parties have objected to numerous portions of the Magistrate's Report and Recommendation. The Court finds that many of the objections are clearly without import to the analysis or conclusions reached by the Magistrate and the Court. These objections are not considered in the body of the contemporaneously issued Memorandum and are DENIED.

The Court GRANTS the Dudney defendants' motion for summary judgment.

The motion to dismiss, filed by Alexander Howden Group U.S., Inc. and Alexander Howden Insurance Services, Inc., is DENIED. The rest of the Alexander Howden defendants' motion for summary judgment is DENIED.

The Court REFERS this matter to the Magistrate for further consideration of the Howden defendants' motion for summary judgment against the Frost defendants.

Great Republic's motion for summary judgment is GRANTED insofar as Great Republic was seeking summary judgment

on Integrity and Alexander Howden's claims that Great Republic was liable for negligence in failing to have the Dudney defendants sign an uninsured motorist coverage waiver form. Great Republic's motion for summary judgment is DENIED insofar as Great Republic is seeking summary judgment on Integrity and the Alexander Howden defendants' claim that Great Republic's was negligent in failing to convey to Frost in August, 1984 the information that Integrity/Alexander Howden intended to lower the Dudneys' limits from $10,000,000 to $5,000,000.

The Court ADOPTS the Magistrate's recommendation that Great Republic's motion for summary judgment should be granted as to Integrity and Alexander Howden's assertions of implied rights of indemnity for any damages to them by reason of Great Republic's negligence.

Integrity's motion for summary judgment is DENIED.