OPINION OF THE COURT
Chief Judge Kaye.
In this automobile insurance dispute, both Supreme Court and the Appellate Division concluded that there was a conflict between New York and New Jersey law, and that New York law should control. We conclude there is no such conflict, and in any event New Jersey law applies. Accordingly, we reverse.
I.
On February 18, 1989, Kathleen Stolarz and her husband were injured in a two-car accident on Route 6 in Woodbury, New York. The Stolarz vehicle was a company car leased by her employer, Blue Cross/Blue Shield of New Jersey, and registered in New Jersey. New Jersey Manufacturers Insurance Company (NJM) insured the vehicle under a policy issued to Blue Cross and written to conform to New Jersey law. Stolarz regularly garaged the vehicle at her home in Monroe, New York, a few miles north of the New Jersey border.
The carrier insuring the other vehicle paid the Stolarzes $20,000, the liability limits of its insured’s policy. When Allstate Insurance Company, the insurer of the Stolarzes’ personal cars, disputed the amount payable under that policy’s underinsurance coverage, the Stolarzes served a demand for arbitration and Allstate, in turn, brought a special proceeding in Supreme Court to stay arbitration. NJM, which also disputed the amount payable under its policy’s uninsured/underinsured coverage, joined in the proceeding and sought declaratory relief fixing the rights and obligations of the parties. Allstate, having settled with the Stolarzes, is not before us on this appeal.
The NJM policy contains a single limit of uninsurance/ underinsurance in the amount of $35,000. In accordance with a New Jersey statute,[1] the policy also provided: "Any amount *223 payable under this [Uninsured and Underinsured Motorists] insurance shall be reduced by all sums paid by or for anyone who is legally responsible.” NJM argued that, in accordance with the policy terms and New Jersey law, it was entitled to offset $20,000 (the amount collected by the Stolarzes from the other driver’s insurance carrier) from the $35,000 policy limit. The Stolarzes, however, claimed that under New York case law (see, Matter of United Community Ins. Co. v Mucatel, 127 Misc 2d 1045, affd without opn 119 AD2d 1017, affd for reasons stated at Special Term 69 NY2d 777), offset clauses in underinsurance coverage are void, and they demanded $35,000 without reduction.
Relying on Mucatel, Supreme Court determined that there was a conflict between New York and New Jersey law, and under a choice of law analysis concluded that New York law should govern. Accordingly, the court declared that NJM could not take an offset against the policy’s stated limit. On NJM’s appeal, the Appellate Division agreed with Supreme Court’s reasoning and affirmed. We reverse.
II.
The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved. Scrutiny of the alleged conflicting laws in this case reveals that there is no conflict here.
In Mucatel, Supreme Court held that policies containing underinsurance offset provisions are "misleading and ambiguous” because the stated limit of the policy would never be paid in full, the concept of underinsurance presuming that there is at least some insurance (127 Misc 2d, at 1046). This Court affirmed on Supreme Court’s reasoning.
The policy in this case contains a single, combined $35,000 limit of uninsurance/underinsurance. Thus the insured, in an accident with a negligent driver, is guaranteed a recovery of $35,000, assuming injuries equal to or greater than that amount. If the other driver is uninsured, the full $35,000 is paid by NJM. To the extent the other driver has insurance, NJM pays the difference up to the "limit” of $35,000.
Mucatel involved strictly an underinsurance clause, whereas here the policy is written with a single limit of un/ underinsurance. The distinction is critical. Mucatel’s rationale —that the policy’s stated limit would never be paid in full— *224 does not apply here because there are circumstances where the stated limit would be fully paid. Accordingly, the provision at issue does not present a similar deception to that identified in Mucatel.
This Court has not previously considered a combined un/ underinsurance limit, but any question as to the validity of such provisions should have been laid to rest when the New York Superintendent of Insurance recently promulgated regulations approving single limits and specifically requiring reduction in coverage for amounts recovered from underinsured drivers (11 NYCRR 60-2.1 [c]). Indeed, the regulations were adopted to "eliminate ambiguity [and] minimize confusion” (11 NYCRR 60-2.0 [c]).
The dissent’s contention that the regulations should not be given "retroactive effect” and that the Stolarzes’ "contractual” rights "vested” at the time of the accident misses the point. We look to the regulations not for their binding effect but for guidance in deciding a legal question that must be answered today: whether offset provisions relating to combined un/underinsurance limits are misleading. The Superintendent of Insurance has determined that such clauses are not misleading, and this is persuasive authority (see, by analogy, Matter of Kransdorf v Board of Educ., 81 NY2d 871, 873).[2]
Similarly, the dissent’s argument that the existence of a single limit is immaterial because the offset applies only to the underinsurance component — and that offsets against underinsurance are invariably void under Mucatel — misapprehends the holding of that case. There is nothing inherently objectionable about offsets against the limits of an insurance policy (see, e.g., Matter of Valente v Prudential Prop. & Cas. Ins. Co., 77 NY2d 894, 895-896); indeed they are common. In Mucatel we concluded that the policy was misleading because the insurer would not "ever pay the amount indicated on the *225 policy declaration” (127 Misc 2d, at 1046), and where that is the case Mucatel of course controls. But that situation is not present here. The dissent’s attempt to extend Mucatel and make it applicable by artificially splitting the limit of a single clause into separate components is baseless.
Thus, there is no conflict between New York and New Jersey law, and under the law of either jurisdiction, the policy should be construed as written.
III.
Because the dissent and both lower courts conclude that there is a conflict, we next address the choice of law issue to demonstrate that, even in that event, New Jersey law governs.
The historical approaches to choice of law in both tort and contract were rigid and mechanical. In tort cases, courts invariably applied lex loci delicti — the law of the place of the tort — to all substantive issues (see, e.g., Poplar v Bourjois, Inc., 298 NY 62, 66; Restatement of Conflict of Laws §§ 377-390), while contract cases generally invoked the law of the place where the contract was made or was to be performed (see, e.g., Swift & Co. v Bankers Trust Co., 280 NY 135, 141; Union Natl. Bank v Chapman, 169 NY 538, 543). These inflexible rules proved unsatisfactory because the location of the controlling event was sometimes fortuitous, did not reflect the parties’ intentions, or was insignificant as against the location of other events. Moreover, the traditional approaches failed to accord any significance to the policies underlying the conflicting laws (see, Cooney v Osgood Mach., 81 NY2d 66, 72).
Auten v Auten (308 NY 155), a contract case, and Babcock v Jackson (12 NY2d 473), a tort action, heralded the modern, more flexible approaches to choice of law. As our jurisprudence has evolved, the preferred analytical tool in tort cases is to apply "interest analysis,” where the policies underlying the competing laws are considered (see, Cooney, 81 NY2d, at 72; Schultz v Boy Scouts, 65 NY2d 189, 196-197). Indeed, in a typical tort case — a car accident, for example — strong governmental interests may underlie the choice of law issue. The place where the accident occurred, for example, has an overriding interest in regulating conduct within its borders (Babcock, 12 NY2d, at 483). Similarly, rules distributing the loss after the accident happens may implicate significant governmental interests (see, e.g., Cooney [contribution]; Schultz [charitable immunity]).
*226 By contrast, contract cases often involve only the private economic interests of the parties, and analysis of the public policy underlying the conflicting contract laws may be inappropriate to resolution of the dispute. It may even be difficult to identify the competing "policies” at stake, because the laws may differ only slightly, and evolve through the incremental process of common-law adjudication as a response to the facts presented.
The "center of gravity” or "grouping of contacts” choice of law theory applied in contract cases (see, e.g., Auten v Auten, 308 NY, at 160-161) enables the court to identify which law to apply without entering into the difficult, and sometimes inappropriate, policy thicket. Under this approach, the spectrum of significant contacts — rather than a single possibly fortuitous event — may be considered (see, Restatement [Second] of Conflict of Laws § 188 [2]). Critical to a sound analysis, however, is selecting the contacts that obtain significance in the particular contract dispute. As we have noted, the traditional choice of law factors should be given "heavy weight” in a grouping of contacts analysis (Haag v Barnes, 9 NY2d 554, 560; see also, New Amsterdam Cas. Co. v Stecker, 3 NY2d 1, 5 [emphasizing place of contracting in automobile insurance dispute]; Cooney v Osgood Mach., 81 NY2d, at 74 [using place of the tort, "the traditional choice of law crucible,” to resolve impasse when State interests are irreconcilable]).
There are of course instances where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered. For example, in Zeevi & Sons v Grindlays Bank (37 NY2d 220, 227), involving an international letter of credit, we held that New York law should control so that our State would maintain its position as a financial capital of the world. Similarly, in a finder’s fee dispute, we applied the New York Statute of Frauds instead of New Jersey law which did not require a written agreement. We took into account the policy of the statute as expressed in its legislative history and observed that application of the statute would contribute to New York’s economic development, a strong State interest (see, Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 382-385).
Automobile insurance, highly regulated as it is, may implicate both the private economic interests of the parties and governmental interests in the enforcement of its regulatory *227 scheme. Thus, we may properly consider State interests to determine whether to apply New York law and void the contract’s express terms or apply New Jersey law and enforce the contract as written.
The State interest underlying Mucatel is that consumers purchasing insurance in this State should not be deceived by misleading policy limits. That interest, however, is irrelevant where, as here, the policy is sold in New Jersey by a New Jersey insurance company to a New Jersey insured, and the clause was written to conform to a New Jersey statute. Indeed, while Stolarz (by virtue of her use of the car) is an additional insured under the policy, she is not a party to the contract (see, Bums v Aetna Cas. & Sur. Co., 741 SW2d 318, 322 [Tenn]), nor did she pay the premiums — her New Jersey employer did. Thus, New York has no governmental interest in applying its law to this dispute and New Jersey law must be applied (compare, Matter of Istim, Inc. v Chemical Bank, 78 NY2d 342, 348 ["Because Illinois’ policy of requiring notice to judgment debtors is irrelevant, the only relevant policy interest is that of New York in having its attorneys fairly compensated”]).
The same result obtains under a "grouping of contacts” analysis that does not consider State interests. When the significant contacts are considered in light of the reality that this is a contract case, not a tort, it is plain that this dispute overwhelmingly centers on New Jersey. The Restatement, for example, enumerates five generally significant contacts in a contract case: the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties (see, Restatement [Second] of Conflict of Laws § 188 [2]).
Indisputably, New Jersey is the place where the contract was negotiated and made. The parties to the contract are both New Jersey entities. The subject matter of the contract, a vehicle, does not have a fixed location but is registered in New Jersey.[3] Thus, four of the five factors identified in the Restate *228 ment plainly point to New Jersey law. (The fifth factor, place of performance, is immaterial here because there is no issue as to performance.)
The dissent’s reliance on New York as the situs of the accident and the place where Stolarz (a nonparty to the contract) and the other driver lived confuses the contacts that might be significant in a tort case with those that are material in a contract dispute. In that vein, it is instructive to examine how this and other courts have treated choice of law in automobile insurance cases involving multistate contacts.
In New Amsterdam Cas. Co. v Stecker (3 NY2d 1), a policy was issued in New York to a New York resident. An accident occurred in Connecticut and the insured argued that Connecticut law should apply. The Court flatly rejected the insured’s argument that the accident situs, as the supposed "place of performance,” should control. Citing Auten, the Court held:
"The error which defendants commit is in assuming that the question here involves performance of a contract. * * * Is the defendant Molly Stecker insured? Has Amsterdam agreed to indemnify her for the loss here anticipated? What was the contract the parties made? What were the rights and obligations which flowed from the document they drew? These are questions, the answers to which are governed solely by the lex loci contractus— New York State” (3 NY2d, at 5).
Similarly, on facts identical to the present case, the Supreme Court of Rhode Island concluded that the situs of the accident and plaintiff’s residence were irrelevant (Baker v Hanover Ins. Co., 568 A2d 1023 [RI]). There, in dispute was an uninsured motorist clause contained in a policy issued to a Massachusetts corporation. The car, as here, was leased by the corporation and registered in the corporation’s home State. Plaintiff — the corporation’s president — lived in Rhode Island and got into an accident there. The court concluded that Massachusetts law must apply: "In the case at bar we are dealing with a policy of insurance executed and delivered in the Commonwealth of Massachusetts to a Massachusetts corporation whose principal place of business is located in South Attleboro, Massachusetts. Consequently the construction of *229 this policy must be determined in accordance with Massachusetts law” (568 A2d, at 1025).[4]
In sum, there is no actual conflict between the law of New York and New Jersey, and in any event New Jersey law would apply here.
Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted declaring that only $15,000 of the $35,000 limit provided for in the NJM policy is available to respondents Kathleen and John Stolarz.

. New Jersey Statutes Annotated § 17:28-1.1 (e) (1) provides: "The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he [or she] has recovered under all bodily injury liability insurance or bonds.”

. The dissent relies on Matter of CNA Ins. Cos. (Grandstaff) (188 AD2d 965) in support of its argument that, even after promulgation of the Superintendent’s regulations, all offset clauses are void. That case, however, did not involve a combined un/underinsurance clause but, like Mucatel, strictly underinsurance. Indeed, the court stated that the "relevant language in the face sheet and policy endorsement appears to be identical to that contained in [Mucatel]" (188 AD2d, at 967). The court did not even refer to the regulations.
Similarly, the dissent’s view that Mucatel created "contractual” rights is unsupportable. The effect of Mucatel, where applicable, is to abrogate the contractual language agreed upon by the parties.

. The dissent’s contention that the vehicle was principally used in New York is without evidentiary support in the record. Indeed, it is more logical to assume that the car was primarily used in New Jersey in connection with the business of Blue Cross/Blue Shield of New Jersey, or even if used primarily for commuting, that the bulk of Stolarz’s commute occurred in New Jersey. If the car were garaged and principally used in this State (as assumed by the dissent) it might well be that New York registration would be required (see, e.g., Vehicle and Traffic Law § 250 [1]).

. Without belaboring the point, many other cases reject the sort of contacts the dissent relies upon (see, e.g., Burns v Aetna Cas. & Sur. Co., 741 SW2d 318 [Tenn], supra; Davis v State Farm Mut. Auto. Ins. Co., 264 Ore 547, 507 P2d 9, 10; Nadler v Liberty Mut. Fire Ins. Co., 424 SE2d 256, 262 [W Va]; State Farm Mut. Auto. Ins. Co. v Estate of Simmons, 84 NJ 28, 417 A2d 488).