Brian J. MILLER and Heidi G. Miller, his wife, Plaintiffs,

v.

BOMBARDIER, INC., a Canadian Corporation, Defendant.

BOMBARDIER, INC., a Canadian Corporation, Third–Party Plaintiff,

v.

ERNST & YOUNG and Ian Wilson, Third–Party Defendants.

No. 93 Civ. 0376 (PKL).

United States District Court, S.D. New York.

Jan. 12, 1995.

Roy E. Kurnos, Murphy and Kurnos, Morristown, NJ, for Brian J. and Heidi G. Miller.

James P. Barrett, Simpson Thacher & Bartlett, New York City, for Bombardier, Inc.

Thomas E. Tookey, Quirk and Bakalor, P.C., New York City, for Ian Wilson and Ernst & Young.

### MEMORANDUM ORDER

LEISURE, *District Judge:*

This action arises out of a snowmobiling accident in Canada. Plaintiffs are Brian J. Miller ("Mr. Miller") and his wife, Heidi G. Miller ("Ms. Miller") (collectively, the "Millers"). The Millers are citizens of Connecticut. Defendant is Bombardier, Inc. ("Bombardier"), a Canadian corporation with its principal place of business in Montreal, Canada. Mr. Miller alleges that injuries that he suffered while riding a snowmobile in Canada were proximately caused by Bombardier's negligence. Ms. Miller alleges loss of consortium arising out of Mr. Miller's injuries. The amount in controversy exceeds $50,000 exclusive of interest and costs. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

Bombardier has moved for partial summary judgment limiting its potential liability to the Millers for non-economic damages to the amount allowable under Canadian law. For the reasons stated below, the motion is granted.

### BACKGROUND[1]

The Millers are Connecticut domiciliaries. Bombardier is a Canadian domiciliary.

Mr. Miller is a partner in the New York office of third-party defendant Ernst & Young. In early 1992, Bombardier invited Mr. Miller and two of his colleagues, including third-party defendant Ian Wilson ("Wilson"), to visit Bombardier's operations in

---

1. The following recitation of the background of this controversy is drawn from Bombardier's statement pursuant to Local Rule 3(g). The Millers did not file a counter-statement pursuant to Local Rule 3(g), and the contentions of Bombardier's 3(g) statement are therefore taken as true, for purposes of this motion. *See Dicola v. Swiss-Re Holding,* 996 F.2d 30, 31 (2d Cir.1993) (citation omitted). In any event, the Millers' Memorandum of Law in Opposition does not assume the existence of material facts inconsistent with those set forth in Bombardier's 3(g) statement.

Valcourt, Quebec, Canada. The purpose of the visit was to discuss financing for one of Bombardier's operations.

Mr. Miller and his colleagues arrived in Valcourt on January 29, 1992. Following a meeting at Bombardier's offices, Bombardier officials organized a snowmobiling trip for Mr. Miller and his colleagues. After participating in a practice session, which consisted of riding snowmobiles in a field for approximately fifteen minutes, a group including Mr. Miller and Wilson set out to ride on a snowmobile trail. Mr. Miller rode fourth or fifth in the caravan of seven snowmobiles. Wilson rode the snowmobile behind Mr. Miller's. At the end of long straightway on the trail was a left turn, which Mr. Miller failed to negotiate. Instead, he proceeded straight ahead to an open area, then stopped. Wilson followed Mr. Miller into the open area, where he struck Mr. Miller's left leg with the front ski of his snowmobile, seriously injuring Mr. Miller.

Immediately following the accident, Mr. Miller was treated by emergency medical personnel and taken to a hospital in Quebec. Mr. Miller was then flown to New York, where he underwent surgery. Mr. Miller then received rehabilitation treatment for several months in Greenwich, Connecticut. Mr. Miller returned to work part-time in May 1992 and is now working full-time again.

The Millers instituted this action against Bombardier on or about January 22, 1993, Mr. Miller alleging negligence and Ms. Miller alleging loss of consortium. Bombardier, in turn, instituted a third-party action against Wilson and .Ernst & Young, alleging that Wilson's negligence contributed to Mr. Miller's injuries and that Ernst & Young, as Wilson's employer, is liable for Wilson's negligence on a theory of *respondeat superior*.

## DISCUSSION

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). In deciding the motion, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Balderman v. U.S. Veterans Administration,* 870 F.2d 57, 60 (2d Cir.1989). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, however, the burden shifts to the nonmoving party to " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Bombardier argues that it is entitled to partial summary judgment limiting its potential liability to the Millers for non-economic damages to the amount of such damages allowable under Canadian law. The Millers respond that the extent of Bombardier's potential liability for non-economic damages should be controlled by New York or Connecticut law.[2]

**2.** The Millers also "aver," without citation, that "the law of virtually every American jurisdiction is the same on the question of non-economic damages," so that "the conflict here is not between the laws of New York (or Connecticut) and those of Quebec, but between the law of Canada and the law of the United States." Plaintiffs' Memorandum of Law in Opposition at 3 n. 1. Therefore, the Millers conclude, "American law,"

rather than "Canadian law," should control the extent of Bombardier's potential liability for non-pecuniary damages. *Id.* Although this argument is ingenious, the Court's interest in it is no more than academic, for it has no grounding in New York's choice of law rules, and it ignores the point that no "United States" or "American" (read "federal") law even arguably applies herein.

"A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits—here New York—to resolve conflict-of-law questions." *AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 269–70 (2d Cir.1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). The Court of Appeals of New York has instructed that "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the law of the jurisdictions involved." *In re Allstate Insurance Co.,* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936, 937 (1993) (Kaye, C.J.). An actual conflict exists between the law of two (or more) jurisdictions, where "one State's interest [in applying its law] cannot be accommodated without sacrificing the other's." *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 76, 595 N.Y.S.2d 919, 925, 612 N.E.2d 277, 283 (1993) (Kaye, C.J.). "When plaintiff's State, for example, would allocate [a] loss to defendant but defendant's State would force plaintiff to bear the loss, a true conflict arises." *Id.,* 81 N.Y.2d at 73, 595 N.Y.S.2d at 923, 612 N.E.2d at 281.

■ Applying these principles to the present record, viewed in a light most favorable to the Millers, the Court finds that no actual conflict exists between the laws of Canada and New York, but that an actual conflict does exist between the laws of Canada and Connecticut. With respect to the asserted Canada–New York conflict, the Millers have identified numerous "contacts" between this litigation and New York—for example, the facts that Mr. Miller worked (and continues to work) in New York; that Mr. Miller had some business correspondence with Bombardier to and from New York, prior to the injury; and that Mr. Miller received some treatment for his injuries in New York. The Court of Appeals, however, has "rejected the indiscriminate grouping of contacts ... because it bore no reasonable relation to the underlying policies of conflicting rules of recovery in tort actions." *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985) (citations omitted). Instead, "[i]n tort actions, New York applies a so-called interest

analysis," *AroChem,* 968 F.2d at 270 (citing *Babcock v. Jackson,* 12 N.Y.2d 473, 481–82, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)) (citations omitted), pursuant to which "the policies underlying the competing laws are considered." *Allstate,* 81 N.Y.2d at 225, 597 N.Y.S.2d at 906, 613 N.E.2d at 938 (citations omitted). A court following the interest-analysis approach will "look only to those facts or contacts that relate to the purpose of the particular laws in conflict." *AroChem,* 968 F.2d at 270. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz,* 65 N.Y.2d at 197, 491 N.Y.S.2d at 95, 480 N.E.2d at 684 (citations omitted).

■ Here, the Millers are domiciled in Connecticut, Bombardier is domiciled in Canada, and the locus of the tort is Canada. As a result, neither New York's interest in ensuring that its domiciliaries are fully compensated when they suffer tortious injury, nor New York's interest in regulating conduct that occurs within its borders, would be frustrated by applying Canadian law to determine the extent of Bombardier's potential liability to the Millers for non-economic damages. The fact that New Yorkers provided some of Mr. Miller's medical care would implicate New York's interest in ensuring that those providers are compensated. *See Schultz,* 65 N.Y.2d at 201, 491 N.Y.S.2d at 97, 480 N.E.2d at 687. But the Canadian law at issue here limits the availability of only non-economic damages, which do not include medical expenses. As a result, New York's interest in ensuring compensation to its medical care providers would not be frustrated if Canadian law applied. This action therefore does not present a true conflict between the respective laws of Canada and New York. *See Cooney,* 81 N.Y.2d at 76, 595 N.Y.S.2d at 925, 612 N.E.2d at 283 (A "true conflict" exists where "one State's interest cannot be accommodated without sacrificing the other's.").

■ With respect to the asserted Canada–Connecticut conflict, however, an actual conflict does exist. Bombardier is a Canadian domiciliary, whereas the Millers are Connect-

icut domiciliaries. Moreover, Canadian law places significant limits a tortfeasor's potential liability for non-economic damages, whereas Connecticut law does not. The interests underlying Canada's law (protecting domiciliaries from excessive liability and maintaining affordability of insurance coverage) are not reconcilable with the interest underlying Connecticut's law (ensuring full compensation for domiciliaries who suffer tortious injury). As a result, "an appropriate method for choosing between the two must be found." *Cooney*, 81 N.Y.2d at 76, 595 N.Y.S.2d at 283, 612 N.E.2d at 925.

To this end, the Court turns to *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972) (Fuld, C.J.), and its progeny. Although *Neumeier* was itself a guest-statute case, the Court of Appeals has applied the so-called "*Neumeier* rules" outside the guest-statute context, at least where the conflicting laws at issue "are loss allocating, not conduct regulating." *See Cooney*, 81 N.Y.2d at 73–78, 595 N.Y.S.2d at 924–26, 612 N.E.2d at 281–84 (applying *Neumeier's* second rule: "Contribution rules—as involved in the present case—are loss allocating, not conduct regulating."); *Schultz*, 65 N.Y.2d at 199–202, 491 N.Y.S.2d at 96–98, 480 N.E.2d at 685–87 (applying *Neumeier's* first and third rules: "[T]he [charitable-immunity] rule in conflict is loss-allocating rather than conduct-regulating."); *see also Barkanic v. General Administration of Civil Aviation of People's Republic of China*, 923 F.2d 957, 961–63 (2d Cir.1991) (Oakes, J.) (reasoning that *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), and its progeny have been superseded by *Schultz*: "[I]t appears to us that New York courts would now apply the *Neumeier* rules to all post-accident loss distribution rules.") (citations omitted). Here, the conflicting laws concern the limit, if any, on recovery of non-economic damages. These laws are plainly "loss allocating, not conduct regulating," for purposes of New York's choice-of-law rules. *See, e.g., Barkanic*, 923 F.2d at 963 ("[P]ost-accident loss distribution rules ... includ[e] rules that limit damages in wrongful death actions."). The Court therefore applies the *Neumeier* rules to resolve the conflict presented.

In particular, the "second *Neumeier* rule addresses 'true' conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary." *Cooney*, 81 N.Y.2d at 73, 595 N.Y.S.2d at 923, 612 N.E.2d at 281. The Millers and Bombardier are, of course, domiciled in different jurisdictions, and each jurisdiction's law favors its domiciliary. *Neumeier's* second rule therefore applies. "Under that rule, the place of injury governs," *id.*, 81 N.Y.2d at 76, 595 N.Y.S.2d at 283, 612 N.E.2d at 925, "[a] primary reason [being] that [the] locus ... is ordinarily ... the place with which both parties have voluntarily associated themselves," *id.*, 81 N.Y.2d at 77, 595 N.Y.S.2d at 925, 612 N.E.2d at 283. In this action, Canada is the place of injury and the place, as between Canada and Connecticut, with which both Mr. Miller and Bombardier have voluntarily associated themselves. The law of Canada therefore controls the extent of Bombardier's potential liability to Mr. Miller for non-economic damages. *See Barkanic*, 923 F.2d at 961–63.

Moreover, although Ms. Miller did not voluntarily associate herself with Canada, this fact does not render Canadian law inapplicable to her loss of consortium claim against Bombardier. *See Cooney*, 81 N.Y.2d at 77, 595 N.Y.S.2d at 925, 612 N.E.2d at 283. Rather, the fact that Ms. Miller's claim arises out of Mr. Miller's injuries, which he suffered in Canada as a result of his voluntary association with Canada, provides ample reason to apply Canadian law to Ms. Miller's claim. *See Barkanic*, 923 F.2d at 961–63 (under second *Neumeier* rule, law of place where decedent died, not place where decedent or plaintiff was domiciled, applies to damage-limitation issue in wrongful death action); *but cf. Scharfman v. National Jewish Hospital & Research Center*, 122 A.D.2d 939, 506 N.Y.S.2d 90 (2d Dept.1986) (applying law of plaintiff's domicile, although second *Neumeier* rule was applicable, because [unlike in this action] defendant had engaged in substantial business activities in plaintiff's domicile). The Court therefore concludes that Canadian law controls Bombardier's potential liability for non-economic damages to Ms. Miller, as well as to Mr. Miller.

New York "public policy" is not offended by this conclusion, under the circumstances of this case. "The public policy doctrine is an exception to implementing an otherwise applicable choice of law in which the forum refuses to apply a portion of foreign law because it is contrary or repugnant to its State's own public policy." *Schultz*, 65 N.Y.2d at 202, 491 N.Y.S.2d at 98, 480 N.E.2d at 687 (citation omitted). As is implicit in the foregoing definition:

the public policy exception should be considered only after the court has first determined, under choice of law principles, that the applicable substantive law is not the forum's law.... Moreover, *the exception could apply only when New York's nexus with the case is substantial enough to threaten [New York's] public policy.*

*Cooney*, 81 N.Y.2d at 78, 595 N.Y.S.2d at 926, 612 N.E.2d at 284 (emphasis added) (citation omitted). As explained above, New York's interest in the Millers' action against Bombardier is not even so substantial as to create an actual conflict between the respective laws of Canada and New York concerning the limits on recovery of non-economic damages. The Court therefore finds that New York's relationship to the parties and occurrences involved here is too attenuated "to implicate [New York's] public policy and call for its enforcement." *Schultz*, 65 N.Y.2d at 203, 491 N.Y.S.2d at 100, 480 N.E.2d at 689 (New York public policy against charitable immunity not implicated, where no party was New York domiciliary, even though tortious conduct occurred in New York) (citation omitted); *see also Barkanic*, 923 F.2d at 963–64 (New York public policy against damage limitations in wrongful death actions not implicated, where "there is *no* connection between the parties and the occurrence, on the one hand, and the state of New York, on the other") (emphasis in original); *compare Mertz v. Mertz*, 271 N.Y. 466, 470–75, 3 N.E.2d 597, 598–601 (1936) (New York public policy favoring spousal immunity precluded application of Connecticut law allowing spouses to sue one another, where both spouses were New York domiciliaries); *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 39–42, 211 N.Y.S.2d 133, 135–38, 172 N.E.2d 526, 527–29 (1961) (New York public policy against damage limitations in wrongful death actions precluded application of Massachusetts wrongful-death damage limitation, where decedent was New York domiciliary and defendant carried on extensive operations in New York).

The Court therefore concludes that Canada's law, which significantly limits a tortfeasor's liability for non-economic damages, applies to the Millers' claims against Bombardier.

## CONCLUSION

Bombardier's motion for partial summary judgment limiting its potential liability for non-economic damages to the amount available under Canadian law is HEREBY GRANTED. The parties to this action shall appear before this Court on February 17, 1995, at 11:30 AM, for a pre-trial conference in Courtroom 1106, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**