James ROCHFORD, Plaintiff,

v.

WOODLOCH PINES, INC., Woodloch Resort a/k/a Woodloch Pines Resort, and Woodloch Springs Golf Course and Country Club a/k/a/ the Country Club at Woodloch Springs, Defendant.

No. 10–CV–3190.

United States District Court, E.D. New York.

Aug. 26, 2011.

Mary Ann Candelario, Picciano & Scahill, P.C., Westbury, NY, for Plaintiff.

David Joseph Varriale, Kaufman Borgeest & Ryan LLP, Valhalla, NY, for Defendant.

## JUDGMENT MEMORANDUM AND ORDER

JACK B. WEINSTEIN, Senior District Judge:

I. Introduction ............................................... 344

II. Facts ...................................................... 345
    A.  Incident ................................................ 345
    B.  Design of the Steps ..................................... 348

III. Law ........................................................ 348
    A.  Summary Judgment Standard ......................... 348
    B.  New York Law Applies ................................ 349
    C.  Doctrine of Primary Assumption of Risk ............... 349

IV. Application of Law to Facts ............................... 350

V. Conclusion ................................................ 351

### I. Introduction

James Rochford sues Woodloch Pines, Incorporated ("Woodloch"). He was injured when he slipped and fell on stairs near the fifteenth hole of the Woodloch golf course while playing during a rainstorm. He alleges that the defendant was negligent in maintaining the stairs, and that it failed to properly train and supervise Woodloch staff in proper maintenance of the grounds.

No matter how carefully we construct golf courses in the form of earthly Elysian fields, they necessarily retain some dangers to those who use them. With the pleasures of playing in the rain on artificially-created natural paradises come the known risks of walking on wet steps and grounds. The sportsman himself is expected to be on guard. *See, e.g., The Columbia Encyclopedia* 1104 (Barbara A. Chernow & George Vallasi, eds., 5th ed.

1993) (the "basic principle underlying nearly all the rules [of golf]" is that "players must play the course as they find it—a course 'containing natural or artificial obstacles (hazards)' "). There is no showing of any unusual or unexpected hazard on the Woodloch links that caused plaintiff's injury.

Defendant's motion for summary judgment is based on plaintiff's assumption of an open, obvious, and avoidable risk. It is granted for the reasons set out below:

## II. Facts

### A. Incident

On an overcast day in May of 2009, plaintiff, a resident of New York, was invited to play golf at Woodloch Pines, a golf course in Pennsylvania, with three friends. Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ¶ 3 ("Def.'s 56.1 Statement"); Pl.'s Statement Pursuant to Rule 56.1 ¶ 3 ("Pl.'s 56.1 Statement"); Compl. ¶ 10. It began to drizzle between the third and fourth hole. Def.'s 56.1 Statement ¶ 7; Rochford Dep. 69:7–12. By the fourteenth hole, the rain was coming down hard. *Id.* 69:13–20; Dep. of Deborah Tucker, Emergency Medical Responder, 30:3–31:3 (stating it was raining and the ground was wet). Approaching the fifteenth hole, plaintiff and his friends discussed stopping play. They decided to press on. Def.'s 56.1 Statement ¶ 9; Pl.'s 56.1 Statement ¶ 9; Rochford Dep. 70:10–71:9.

After two strokes at the fifteenth hole, plaintiff walked towards the green with one of his companions. They used brick and wooden railroad tie stairs. Def.'s 56.1 Statement ¶ 11; *see* Def. Exh. A, set out below.

Plaintiff was familiar with the Woodloch golf course. He had played there on prior occasions. He was aware of the topography of the fifteenth hole. Though he had never before used the stairs leading to this green, he had seen them. Rochford Dep. 72:4–75:18.

The friend walked down first without incident. *Id.* at 20; Rochford Dep. 84:9–23. But Rochford slipped on one of the first steps and broke his ankle. Def's 56.1

Statement ¶ 1113. Rochford Dep. 91:15–23. It was raining. *Id.* at 95:11–17. Plaintiff was looking down, talking, and holding his putter in his right hand, *id.* at 84:4–8; 83:17–19; 88:15–21. He had consumed two or three beers. *Id.* at 107:5–24; Def.'s 56.1 Statement ¶ 19.

The other two in the foursome had taken a different route entirely on the grass, avoiding the steps. They had experienced no problem. Def.'s Statement ¶ 21; Rochford Dep. 84:25–85:16.

### B. Design of the Steps

Jeffrey Hugaboom, Woodloch golf course's experienced superintendent, had overseen construction of the steps. Dep. of Jeffrey Hugaboom ("Hugaboom Dep.") 14:3–24. They were made with "railroad ties" and red brick. *Id.* at 15:811. *See* Ex. A, *supra.* There are similar steps at the sixth hole utilizing the same design and materials. Hugaboom Dep. at 31:13–33:5. Hugaboom used these materials because, in his view, they were the safest and were "standard" for golf courses. *Id.* at 19:6–13. He had never considered putting a handrail next to the steps or .non-slip materials on the wood portion of the stairs, *id.* at 46:7–24, because he had never seen golf courses use anti-slip materials on similar steps, *id.* at 28:7–29:5. Prior to plaintiff's injury, Hugaboom and defendant were not aware of any complaint having been made regarding the stairing. *Id.* at 43:21–23.

Plaintiff's engineer submitted a report in connection with the incident. *See* Plaintiff's Mem. of L. in Opp'n to Rule 56 Mot. for Summ. J., Ex. E. ("Sauzner Report"). He relied on an International Building Code requirement that "floor surfaces" be made slip resistant. *See* Ex. E at 6 ("The absence of a slip resistant tread surface, as stipulated in the International Building Code and Safe Walking Surface Standards of the AASM, is the root cause of Mr.

Rochford's fall and associate injuries."). Evidence that the steps did not comply with the International Building Code ("IBC"), and in particular, Chapter 10, Matters of Egress, is ignored as irrelevant. There is no indication that the IBC was intended to be applied to outdoor golf courses.

### III. Law

#### A. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004). Dismissal is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Anderson,* 477 U.S. at 247–50, 255, 106 S.Ct. 2505; *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir.2009). The burden rests on the moving party to demonstrate the absence of a genuine dispute of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed.R.Civ.P. 56(e). "[M]ere conclusory allegations, speculation, or conjecture" will not suffice. *Cifarelli v. Vill. of Babylon,* 93 F.3d 47, 51 (2d Cir.1996); *see also Delaware & Hudson Ry. v. Consol. Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990).

## B. New York Law Applies

In a diversity action, the forum state's choice of law rules apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York courts apply the law of the place where the tort occurred with regard to "conduct regulating" rules, including the duty of care. *See Lee v. Bankers Trust*, 166 F.3d 540, 545 (2d Cir. 1999). The incident occurred in Pennsylvania. New York and Pennsylvania both recognize the doctrine of primary assumption of risk. *See Morgan v. State of New York*, 90 N.Y.2d 471, 662 N.Y.S.2d 421, 685 N.E.2d 202 (1997); *Montagazzi v. Crisci*, 994 A.2d 626 (Pa.Super.Ct.2010). Because there is no conflict of substantive law between the two states, New York law applies. *See Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 223–27, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). The result on this motion would be the same if Pennsylvania law applied.

## C. Doctrine of Primary Assumption of Risk

Individuals who engage in a sport or recreational activity consent to assume commonly appreciated risks that are inherent in and arise out of the nature of the sport. "One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary.... A different case would be here if the dangers inherent in the sport were obscure or unobserved, or so serious as to justify the belief that precautions of some kind must have been taken to avert them." *Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479, 482–83, 166 N.E. 173 (1929); *see also Morgan*, 90 N.Y.2d at 484, 662 N.Y.S.2d 421, 685 N.E.2d 202 ("Relieving an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks"); W. Page Keeton et al., *Prosser and Keeton on Torts* § 68, at 486–87 (5th ed. 1984). This rule "facilitate[s] free and vigorous participation in athletic activities." *Morgan*, 90 N.Y.2d at 484, 662 N.Y.S.2d 421, 685 N.E.2d 202 (citing *Benitez v. New York City Bd. Of Educ.*, 73 N.Y.2d 650, 657, 543 N.Y.S.2d 29, 541 N.E.2d 29 (1989)).

Concealed or unreasonably increased risks are not assumed. *Morgan*, 90 N.Y.2d at 485, 662 N.Y.S.2d 421, 685 N.E.2d 202. The owner or operator of a sports arena violates a duty of care when the conditions caused by the defendants' negligence are "unique and created a dangerous condition over and above the usual dangers that are inherent in the sport." *Owen v. R.J.S. Safety Equip.*, 79 N.Y.2d 967, 970, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (1992).

Golfers should be aware of the usual risks of their sport. *See, e.g., Anand v. Kapoor*, 15 N.Y.3d 946, 917 N.Y.S.2d 86, 942 N.E.2d 295 (2010) (golfer's failure to warn of intent to strike golf ball did not unreasonably increase risks inherent in golf that plaintiff assumed when he was injured by errant ball on course); *Mangan v. Engr's Country Club, Inc.*, 79 A.D.3d 706, 912 N.Y.S.2d 643 (2d Dep't 2010) (golfer assumed risks "associated with the construction of the playing surface and any open and obvious condition on it" when he slipped and fell on golf course while descending a staircase leading from cart path to tee box); *Lombardo v. Cedar Brook Golf & Tennis Club, Inc.*, 39 A.D.3d 818, 834 N.Y.S.2d 326 (2d Dep't 2007) (golfer assumed the risk of slip and fall on wet grass that was an open and obvious condition of which he was fully aware prior to playing the hole); *Barbato v. Hollow Hills Country Club*, 14 A.D.3d 522, 789 N.Y.S.2d 199 (2d Dep't 2005) (same); *Carracino v. Town of Oyster Bay*, 247 A.D.2d 501, 669

N.Y.S.2d 328 (2d Dep't 1998) (golfer assumed risk that her feet might sink into mud during course of game after she had completed eight holes in the rain).

### IV. Application of Law to Facts

■ Plaintiff knew that it was raining, and that the steps appeared to be wet and slippery. He was, or should have been, aware of the risk of slipping. The fact that the stairs did not have a hand rail was an open and obvious condition. As an experienced golfer, he should have appreciated the nature of the danger.

On previous occasions plaintiff had taken a different route to reach the fifteenth green, avoiding the stairs, as did two of the foursome on the day in question. His knowledge of the sport and this course placed him in a position to foresee the risk of playing in the rain. *See Morgan,* 90 N.Y.2d at 486, 662 N.Y.S.2d 421, 685 N.E.2d 202 ("[A]ssessing the duty of care owed by an owner or operator of a sporting facility requires that the participant have not only knowledge of the injury—causing defect but also appreciation of the resultant risk, but awareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff." (internal quotations omitted)). He and his group had in fact considered stopping play because of the rain, but they decided to continue.

■ There is no admissible evidence to support the claim that the stairs were "unnecessarily slippery." *See* Pl.'s Mem. of Law in Opp'n to Def. Mot. Summ. J. ("Pl.'s Opp'n"), Doc. Entry 36, June 21, 2011. Plaintiff's expert did inspect the stairs and opined that they were excessively dangerous because they failed to comply with the International Building Code ("IBC") and the Safe Walking Surface Standards of the American Society for Testing and Materials ("ASTM"), which requires the use of slip-resistant materials on floor surfaces and place limitations on the allowable slope of stairs. Pl.'s Opp'n Ex. E, at 6.

These standards are by definition not applicable to outdoor golf courses. The IBC has been adopted by the Uniform Construction Code ("UCC"), enacted by the Commonwealth of Pennsylvania, as a *building sub-code. See* Decl. of Steven J. Auletta in Supp. Def's Rule 56 Mot., Ex. A ¶ 6 ("Aluetta Decl."); Pa. U.C.C. § 403.1(a). Its scope and application covers "construction, alteration, repair, movement, equipment, removal, demolition, location, maintenance, occupancy or change of occupancy of *every building or structure* while occurs on or after April 9, 2003 and all existing structures that are not legally occupied." Pa. U.C.C. § 403.1(a) (emphasis added). The stairs at the fifteen hole of the Woodloch golf course are not part of a "building or structure" within the meaning of that provision.

The portions of the IBC relied upon by plaintiff's expert are contained in Chapter 10, entitled "Means of Egress." "Means of Egress" is defined as "[a] continuous and unobstructed path or vertical and horizontal egress travel *from any occupied portion of a building or structure* to a public way. A means of egress consists of three separate and distinct parts: the exit access, the exit and the exit discharge." *See* IBC § 1002, "Means of Egress, Definitions"; Aluetta Decl., Ex. C (emphasis added). The landing and stairs leading to the green at the fifteenth hole of Woodloch golf course do not fall within this definition. The IBC does not apply. *Cf. Barbato,* 14 A.D.3d at 523, 789 N.Y.S.2d 199 (holding that "the plaintiff's expert did not sufficiently identify any specific industry standard upon which he relied in concluding that the defendant negligently watered the course. Therefore, it was insufficient

to raise a triable issue of fact in response to the defendant's establishment of it entitlement to judgment as a matter of law.").

Plaintiff's expert opinion is of no probative force. *See* Fed.R.Evid. 401, 402, 403, 702. It is not "based on sufficient facts or data." Fed.R.Evid. 702. By contrast, defendant's expert relied on experience with the specific steps in question, and has not been contradicted.

## V. Conclusion

Defendant's motion for summary judgment is granted. No costs or disbursements.

SO ORDERED.